22 A.3d 909

Jarmal JOHNSON

v.

STATE of Maryland.

No. 3117, Sept. Term, 2007.

Court of Special Appeals of Maryland.

June 30, 2011.

Juan P. Reyes (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for appellant.

Mary Ann Ince (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: MEREDITH, ZARNOCH and IRMA S. RAKER (Retired, specially assigned), JJ.

IRMA S. RAKER (Retired, specially assigned), J.

This case has a long history in the courts. Appellant, Jarmal Johnson, was convicted in 1992 of the offenses of assault with intent to murder, assault, the use of a firearm in the commission of a felony, and the wearing, carrying, or transporting of a weapon. In this collateral attack on his conviction, he presents a single question: whether his conviction for the crime of assault with intent to murder [1] should be

---

1. Appellant's trial preceded the adoption of the Criminal Law Article and was prior to the repeal of Maryland Code (1957, 1992 Repl.Vol.) Article 27 § 12, which provided, in part, that "[e]very person convicted of the crime of an assault with intent to murder is guilty of a felony and shall be sentenced to imprisonment for not less than two years nor

vacated because he was never indicted for that offense. Appellant claims that because the indictment did not charge assault with intent to murder, the circuit court lacked jurisdiction to try him, and hence, he may raise lack of jurisdiction at any time. The heart of the issue in this case is whether the conviction for assault with intent to murder is void for lack of subject matter jurisdiction because the indictment in the case did not charge that offense. We shall hold that it is not. Because we conclude that this is a case not of lack of jurisdiction, but rather the improper exercise of the jurisdiction of the circuit court, appellant's claim was cognizable only on direct appeal. This appeal is untimely and we shall dismiss the appeal.

## I.

Appellant was indicted by the Grand Jury for Baltimore City with the offenses of attempted murder in the first degree, assault, the use of a firearm in the commission of a felony, and the wearing, carrying, or transporting of a weapon. In September 1992, appellant proceeded to trial before a jury and was convicted of assault with intent to murder, assault, the use of a firearm in the commission of a felony, and the wearing, carrying, or transporting of a weapon. He was acquitted of attempted first degree murder. The circuit court sentenced him to a term of incarceration of thirty years for assault with intent to murder, merging the assault charge for sentencing purposes. On the use of a handgun in the commission of a felony, the court imposed a term of incarceration of twenty years, consecutive to the other sentence. Appellant noted a timely appeal to the Court of Special Appeals. The judgments of conviction were affirmed.[2]

---

more than 30 years." *See, e.g., Christian v. State,* 405 Md. 306, 316 n. 6, 951 A.2d 832, 838 (2008).

**2.** *See Johnson v. State,* No. 1730, Sept. Term, 1992, unreported (Md.Ct. Spec.App. July 28, 1993).

We come now to the current issue before this Court. On January 25, 2008, appellant filed a motion to correct an illegal sentence, which the circuit court denied. For the first time, appellant argued that the conviction for assault with intent to murder must be vacated because he was convicted of and sentenced for a crime that was not charged. This appeal followed.[3]

The record as to what transpired below is not as complete as we would like, but certain things are clear. In March 1992, Baltimore City police executed a search warrant at 630 Baker Street, a residence in the City. Shots were fired from within

---

3. Prior to this appeal, appellant made several motions seeking review of or relief from his sentence, none of which are relevant to the matter before this court. On November 30, 1992, appellant filed for review of his sentence, which the court left unchanged. On October 28, 1996, appellant filed for post-conviction relief, in which he argued that his sentences were illegal and called specific attention to the guilty verdict on assault with intent to murder. Before the court decided that issue, appellant filed a second petition for post-conviction relief on June 18, 1997, alleging again that his sentences were illegal. Appellant withdrew his post-conviction action without prejudice on August 17, 1998. On December 22, 1998, appellant again filed for post-conviction relief, which was denied on July 8, 1999. This Court denied appellant's application for leave to appeal that denial. On January 25, 2002, appellant filed a motion for modification of sentence which was denied on February 8, 2002. Appellant then filed an application to reopen his post-conviction proceedings on November 27, 2002. On September 23, 2003, appellant filed a motion to correct an illegal sentence. He argued that the trial court erred by imposing an ambiguous sentence, that it placed him into double jeopardy by imposing a sentence for a greater handgun offense after he was found guilty of a lesser included handgun offense first, and that he was sentenced for counts of a drug related crime for which the jury acquitted him. The circuit court denied appellant's motion on October 27, 2003. On appeal, this Court affirmed the circuit court's denial and the Court of Appeals denied appellant's petition for writ of certiorari. *See Johnson v. State,* No. 2186, Sept. Term, 2003, unreported (Md.Ct.Spec.App. July 6, 2004), *cert. denied,* 383 Md. 213, 857 A.2d 1130 (2004). On September 8, 2004, appellant's motion seeking clarification of his sentence starting date was denied and on October 29, 2004, appellant's motion for sentence modification was denied. On January 10, 2005, appellant again filed a motion to correct an illegal sentence and noted an appeal on February 22, 2005, prior to a ruling on the motion, which was dismissed by this Court during the September Term, 2004. On April 30, 2007, appellant filed a petition for post-conviction relief, which was denied on July 5, 2007.

the apartment and one police officer was shot in the foot. Appellant Jarmal Johnson was arrested, along with three other people. The initial statement of charges alleged drug violations, handgun violations and an assault with intent to murder charge. The Grand Jury for Baltimore City indicted appellant, and the others, in Indictment Number 192099061 and Number 192099063, with the offenses of attempted murder in the first degree, common law assault, two handgun offenses and several drug related offenses.

Appellant proceeded to trial before a jury in a joint trial with the other three co-defendants. The transcript provided to us does not indicate whether the indictment was read to the jury, or whether appellant waived a reading of the indictment; the transcript also does not include any portion related to the trial judge's preliminary comments to the jury, if he made any and whether the charges were summarized to the jury. What is clear is that the parties proceeded as though appellant had been charged with the offense of assault with intent to murder. At the close of the State's case, the defendants made motions for judgment of acquittal. Co-defendants James Harris, Gary Matthews, and Thomas Williams each argued that there was not even a scintilla of evidence against them indicating that they were guilty of the offenses that were charged against them. Co-defendant Harris argued that no evidence suggested he conspired to distribute controlled substances. Co-defendant Matthews argued that he could not have attempted murder or assault with intent to murder because he was cowering in a closet. Co-defendant Williams argued the same, pointing out that he was also in the closet and suggesting that he was on top, without access to the gun on the closet's floor. Appellant argued against the attempted murder charge, insisting that he did not aim at the police when he fired his weapon. Although appellant's counsel did not refer to the charge of assault with intent to murder explicitly, he did not express any exception to the notion that the defendants were charged with both attempted murder in the first degree and assault with intent to murder.

At the close of all of the evidence, the trial judge, out of the presence of the jury, discussed the proposed instructions with the parties. It is clear from the colloquy that defense counsel had submitted requests for particular instructions, although the written requests are not in the record. It is clear also from the discussion that the court used a written verdict sheet, but that document is not in the record either. Nonetheless, appellant agreed to the court's instructions as it related to the particular crimes charged, including the elements of assault with intent to murder, and never indicated to the court that appellant was not charged with assault with intent to murder. The trial court instructed the jury as to attempted murder in the first degree, attempted second degree murder (a lesser included offense of attempted first degree murder), assault with intent to murder, assault, two handgun offenses, and various drug offenses. The court told the jury as follows:

"Each defendant is charged with the crime of assault with intent to murder. In order to convict the defendant, the State must prove (1) that the defendant shot at the victim and (2) that the defendant intended to kill the victim. The requisite mental state is the specific intent to murder. This requires the specific intent to kill, meaning the specific intent to bring about the death of the assault victim. The Court has defined assault with intent to murder as assault with intent to kill under circumstances such that if the victim should die, the crime would be murder. As with murder, the specific intent to kill may be inferred from firing a deadly weapon at a vital part of the human body. Merely pointing a gun in and of itself is insufficient."

The court instructed as to the other charges in the indictment, including attempted murder in the first and second degrees. After the court finished instructing the jury, the court excused the jurors and asked counsel if there were any exceptions to the instructions. Several of the attorneys objected to the failure to give a missing witness instruction and the aiding and abetting instruction. In fact, the court then gave a supplemental aiding and abetting instruction. However, no one objected to the instructions or the verdict sheet listing the

charge of assault with intent to murder. Additionally, the State argued to the jury the merits of the offense of assault with intent to murder. No one objected or stated that the defendants were not charged with that crime.

The jury found appellant guilty of assault with intent to murder police officer Melvin Russell. Again, appellant offered no objection, or even a comment. At sentencing, the court indicated that it was merging the assault conviction into the assault with intent to murder conviction. No objection was lodged and no comment offered that appellant had been convicted of an offense with which he had not been charged. He filed no motion then to correct an illegal sentence and he did not raise the issue on direct appeal.

## II.

Before this Court, appellant argues that he was not charged with the crime of assault with intent to murder and therefore, the conviction for assault with intent to murder must be vacated. He points out that the indictments returned by the Grand Jury charge only attempted murder, assault, the use of a firearm in the commission of a felony or a crime of violence, and wearing, carrying, or transporting a handgun, but do not charge assault with intent to murder.[4] Appellant bases his argument on Article 21 of the Maryland Declaration of Rights,[5] which provides that each person charged with a crime must be informed of the accusation against him and that a "[c]onviction upon a charge not made would be sheer denial of

---

4. Indictments # 192099061 and # 192099063 charged these offenses.

5. Article 21 of the Maryland Declaration of Rights provides as follows:
 "That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defense; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty."

due process." *De Jonge v. Oregon,* 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278 (1937).

Appellant's argument is that he was never indicted for the crime of assault with intent to murder and that assault with intent to murder is not a lesser included offense of attempted murder. In his view, the circuit court did not have jurisdiction to try him for an uncharged offense. In his view, this appeal is timely because lack of jurisdiction may be raised at any time.

The State presents several arguments. First, the State argues that appellant has failed to provide a sufficient record for this Court to review the arguments because appellant failed to make the arraignment proceedings part of the record. This omission is significant, the State maintains, because at the arraignment, the trial court must have made clear which charges were pending against appellant, and without the transcript of that arraignment, this Court cannot review properly his contentions. Along those lines, the State maintains that appellant was aware that he was subject to the charge of assault with intent to murder because that charge was contained in the Statement of Charges. The State argues also that appellant's failure to object at trial, at the time of the jury instructions, or at the time of sentencing precludes the review that appellant now seeks. Without refuting or even addressing appellant's jurisdictional argument, the State asserts that appellant's failure to object at trial precludes appellate review. In addition, the State argues that, because the assault conviction (a common law offense which had no statutory maximum penalty) was merged into the assault with intent to murder conviction for sentencing purposes (an offense which carries a maximum term of thirty years incarceration), appellant cannot now complain that the sentence was illegal. In other words, he received a better deal with the felony assault with intent to murder conviction than he would have had with the common law misdemeanor assault conviction. Finally, the State argues laches, maintaining that, after twenty years, too long a period of time has passed for appellant to raise this issue.

## III.

■ We address first the State's argument that this appeal should be dismissed because appellant did not include a transcript of the arraignment proceedings, and that the record is insufficient for this Court to resolve his appeal. The State's brief contains a footnote stating that counsel for the State "has verified with the circuit court reporters' office that notes of the May 6, 1992, arraignment in Johnson's case were not transcribed and that the record of that proceeding is no longer available." Although the arraignment transcript is not available, the indictments are in the record. We fail to see what the arraignment transcript could add, because even if appellant had been advised that he was charged with assault with intent to murder, the offenses contained in the indictment upon which he was sentenced do not include assault with intent to murder. Although we would have liked to have seen the jury verdict sheet, as well as the defendants' requested jury instructions, we think the record is sufficient for us to decide the issues before us.

■ We turn next to the indictment. A reading of the indictment reveals clearly that assault with intent to murder was not charged by the Grand Jury. To the extent that the State is arguing that assault with intent to murder was somehow included either within the offenses of attempted murder in the first degree or common law assault, we disagree.

■ In discussing whether one crime is a lesser included offense of another, the Court of Appeals in *Hawkins v. State,* 291 Md. 688, 691, 436 A.2d 900, 901–02 (1981), explained that the test for determining whether one offense is included in another is the "same evidence" or "required evidence" test set out in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). If each offense requires proof of a different element, then one is not a lesser included offense of the other. *See Simms v. State,* 288 Md. 712, 726, 421 A.2d 957, 965 (1980). In other words, an offense is a lesser included offense of a greater one if the lesser offense is

established by proof of the same or less than all of the elements required to establish the greater offense. Ordinarily, it is not a difficult task. The approach is to compare the elements of the two offenses.

The elements of attempted murder in the first degree are the intent to commit murder in the first degree and some · overt act towards the commission of that crime. *See Hardy v. State,* 301 Md. 124, 128, 482 A.2d 474, 476 (1984) (defining attempt generally). The intent required for first degree murder is that it shall have been wilful, deliberate, and premeditated. *See Newton v. State,* 280 Md. 260, 268, 373 A.2d 262, 266 (1977). Thus, to prove attempted murder in the first degree, the State was required to prove that Johnson had the wilful, deliberate, and premeditated intent to kill, and that he committed some overt act towards that end.

Assault with intent to murder was a statutory crime in Maryland until it was repealed by the Legislature in 1996. The statute was enacted first by the General Assembly in 1809, Ch. 138 § 4, and read as follows:

"Every person duly convicted of the crime of an assault, with an intent to rob, murder or commit a rape shall be sentenced to undergo confinement in the said penitentiary for a time not less than two nor more than ten years, under the conditions herein after prescribed."

In 1943, the General Assembly made clear that the offense is a felony. *See* 1943 Laws of Maryland, Ch. 402, § 1, at 439. With the exception of an increase in penalty, the statutory offense remained the same until 1996, when repealed by the General Assembly. See 1996 Laws of Maryland, Ch. 632, § 1, at 3616–17 and 3629; *Robinson v. State,* 353 Md. 683, 694, 728 A.2d 698, 703 (1999) (noting that "the 1996 assault statutes . . . explicitly repealed and replaced the entire *statutory* scheme for aggravated assaults then existent, *i.e.,* Assault with Intent to Murder . . ."). The common law offense of assault remained a common law misdemeanor and is a lesser included offense of the greater offense, assault with intent to murder, and not the other way around.

The elements of assault with intent to murder are an assault and an intent to murder. Assault with intent to murder requires only a specific intent to kill, and that if the victim had died, the offense would have been either first or second degree murder. It does not require a wilful, deliberate, and premeditated intent to kill. *See State v. Jenkins,* 307 Md. 501, 515, 515 A.2d 465, 472 (1986).

Assault with intent to murder is not a lesser included offense of attempted murder. *See State v. Holmes,* 310 Md. 260, 272, 528 A.2d 1279, 1285 (1987) (holding that assault with intent to murder is not lesser included offense of attempted murder). Each of the offenses requires an element that the other does not. Attempted murder in the first degree requires a wilful, deliberate, and premeditated intent to kill, while assault with intent to murder does not. Assault with intent to murder requires an assault, while attempted murder in the first degree does not.[6]

Appellant is correct that the indictment, as returned by the Grand Jury, did not include assault with intent to murder, and that assault with intent to murder is not a lesser included offense of any count contained within the indictment. But that small victory does not get appellant where he wishes to go. Simply because he was convicted of an uncharged offense does not mean, *ipso facto,* that the circuit court lacked subject matter or fundamental jurisdiction.

Appellant's subject matter jurisdiction or fundamental jurisdiction argument overlooks the basic distinction between lack of jurisdiction, on the one hand, and the improper exercise of jurisdiction, on the other hand. We hold that the circuit court did have subject matter jurisdiction or fundamental jurisdiction to entertain a charge of assault with intent to murder, but at best for appellant, the circuit court may have erred in the exercise of that jurisdiction.

---

6. Attempted murder could be committed without an assault. For example, a person could attempt to murder another person by putting poison in that person's food.

 The word "jurisdiction" takes on different meanings depending on the context in which it is used. *See Pulley v. State,* 287 Md. 406, 415, 412 A.2d 1244, 1249 (1980). More specifically, subject matter jurisdiction refers to whether the court is the proper forum to entertain cases of a particular class. *See id.* at 416, 412 A.2d at 1249. A court's judgment may be deemed void for lack of subject matter jurisdiction only if the case does not fall within a class of cases in which that court was authorized to act upon. *See First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 334, 322 A.2d 539, 543 (1974). A claim that the court lacked subject matter jurisdiction can be raised at any time. *See Gardner v. Board of County Comm'rs,* 320 Md. 63, 71, 576 A.2d 208, 212 (1990).

 "Exercise of jurisdiction" refers to the authority of the court to decide a particular case within the class of cases that is encompassed by the court's subject matter jurisdiction. *See Moore v. McAllister,* 216 Md. 497, 507–08, 141 A.2d 176, 181–82 (1958). The "exercise of jurisdiction" includes compliance with procedural and statutory requirements. Unlike disputes over subject matter jurisdiction which may be raised at any time and, if proved, render a court decision void, a claim that a court exercised jurisdiction improperly must be raised in a timely appeal and will not necessarily result in the court decision being void; instead, it may be voidable. *See Wells v. Price,* 183 Md. 443, 450, 37 A.2d 888, 892 (1944); *Pratts v. Hurley,* 806 N.E.2d 992, 996, 102 Ohio St.3d 81, 83–84 (2004).

Appellant urges this Court to vacate his conviction because, in his opinion, the circuit court did not have jurisdiction to convict him of an uncharged offense. Maryland, however, has long ago acknowledged the distinction and implications that exist in regards to subject matter jurisdiction and improper exercise of jurisdiction. *See Fooks' Executors v. Ghingher,* 172 Md. 612, 621–23, 192 A. 782, 787 (1937). The Maryland Constitution authorizes circuit courts of this State, as courts of original jurisdiction, to hear and decide all cases at law and in equity other than those reserved by specific laws for the

exclusive jurisdiction of some other forum. *See* Md. Const. Art. IV, §§ 1, 19, 20. The circuit courts of Maryland are courts of original jurisdiction, and this case falls within the scope of the circuit court's subject matter jurisdiction. Appellant's argument fails because this is not a matter of lack of jurisdiction, but instead, an improper exercise of jurisdiction. His remedy for an improper exercise of jurisdiction was a direct and timely appeal.

### IV.

To the extent that appellant suggests that a defective indictment deprives the circuit court of subject matter jurisdiction, we address the indictment arguments he presents. Article 21 of the Maryland Declaration of Rights provides as follows:

"That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defense; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty."

In the circuit court, the charging document is an indictment, a criminal information, or a statement of charges in a case either jury demanded or on de novo appeal from the district court. *See* Md. Rule 4–201(c). The primary purpose of a charging document is to ensure that the defendant is informed of the accusations against him or her in order to fulfill the constitutional requirement of Article 21.

Appellant maintains that the indictment was not amended during the trial proceedings, relying upon the docket entries and trial transcripts. The State argues that appellant was aware that he was subject to the charge of assault with intent to murder based on the record of exchanges from the jury selection, during the arraignment proceedings, and at trial.

Although there are no Maryland cases on this point, federal courts and our sister jurisdictions have addressed the notion of constructive amendment of an indictment. Courts have found constructive amendment of an indictment to occur "when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Cusimano,* 148 F.3d 824, 829 (7th Cir.1998) (citation omitted). Courts have held that an instruction can function as a constructive amendment to an indictment. *See United States v. Griffin,* 215 F.3d 866, 868–69 (8th Cir.2000).

In the case at bar, the jury instruction and the verdict sheet constructively amended the indictment, adding a charge not contained within that charging document. Appellant never objected, and indeed, may have affirmatively requested the jury instruction, or at the very least, acquiesced in the procedure. One question we must consider is whether constructive amendment of an indictment, in Maryland, is reversible error, and if so, can the error be raised collaterally or must it be raised on direct appeal. Another question is whether appellant's silence, acquiescence, and perhaps even request for jury instruction, constituted consent to a constructive amendment of the indictment.

Many courts around the country have held that a constructive amendment of an indictment is error. *See, e.g., United States v. Alhalabi,* 443 F.3d 605, 614 (7th Cir.2006) (stating that "[c]onstructive amendments are forbidden as they violate the guarantees of the Fifth Amendment"); *United States v. Jones,* 418 F.3d 726, 729–30 (7th Cir.2005) (reviewing for plain error on appeal for a claim that jury instructions constructively amended the indictment and holding that the jury instructions did not constructively amend the indictment); *United States v. Collins,* 350 F.3d 773, 775 (8th Cir.2003) (holding that a jury instruction served to constructively amend the indictment and is reversible error *per se* ). The courts, however, appear to have universally held that a constructive amendment does not deprive the court of subject matter jurisdiction, and

that the error must be timely raised. *See, e.g., United States. v. Cotton,* 535 U.S. 625, 630–31, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002) (noting that "defects in an indictment do not deprive a court of its power to adjudicate a case" and that an "objection that the indictment does not charge a crime against the United States goes only to the merits of a case") (citations omitted); *In re Seymour v. State of Alabama,* 946 So.2d 536, 539 (Ala.2006) (holding that a claim of defective indictment is not jurisdictional error and that claim is waived and barred unless raised at trial or on direct appeal).

■ There are several responses to appellant's argument. First, appellant has not preserved this issue for our review. Although he does not raise "constructive amendment" per se, he does argue that he was not charged in the indictment with the offense for which he was convicted. Even if we were to consider his argument a form of constructive amendment, he did not raise the issue on direct appeal. Given his failure to object at trial, his only recourse would have been to argue plain error in his direct appeal.[7] This claim is not preserved for our review.

■ Second, by appellant's conduct, he has consented to the amendment of the indictment. Courts in other jurisdictions have held that a defendant consents to an amendment of the indictment where the defendant affirmatively requested a jury instruction for a crime not charged in the indictment. *See Demonbreun v. Bell,* 226 S.W.3d 321, 324 (Tenn.2007) (holding that petitioner consented to an amendment of the indictment to include an offense not charged originally in the indictment when he affirmatively sought jury instructions for that offense at trial). Although it is unclear from the record

---

7. Although this case is not a post-conviction proceeding raising ineffective assistance of counsel for counsel's failure to object at the trial level, appellant would have a difficult time convincing us that counsel's failure to object (or indeed his specific request for such an instruction) was anything other than trial tactics or strategy. The maximum penalty for assault with intent to murder was a term of incarceration of thirty years. The maximum penalty for attempted first degree murder is life imprisonment.

whether appellant affirmatively requested jury instructions on assault with intent to murder, it is clear that he did not object to the jury instructions on assault with intent to murder.

Our research has revealed one case on constructive amendment of an indictment in Maryland. *See Sparks v. State,* 91 Md.App. 35, 98, 603 A.2d 1258, 1288 (1992). This Court, however, did not address constructive amendment, stating that "[they] flatly decline to follow counsel into such a doctrinal quagmire. Involved here was a simple communications problem...." *Id.*[8]

To the extent that appellant relies upon Maryland Rule 4–204, his reliance is misplaced. A constructive amendment differs from an express amendment. Rule 4–204 provides as follows:

"On motion of a party or on its own initiative, the court at any time before verdict may permit a charging document to be amended except that if the amendment changes the character of the offense charged, the consent of the parties is required. If amendment of a charging document reasonably so requires, the court shall grant the defendant an extension of time or continuance."

The instant case is not a Rule 4–204 amendment. As we have noted, this is a case of a constructive amendment, one not contemplated by the Rule, and any complaint appellant has to the amendment has been waived by his failure to raise it on direct appeal.

## V.

We address next Maryland Rule 4–252, the rule that addresses motions in the circuit court. Rule 4–252(d), con-

---

8. In contrast, some Maryland cases dealt with the situation where the indictment should have been amended but was not, and where the appellant was charged and convicted under one statute when the evidence supported conviction only under a different statute. *See, e.g., Moosavi v. State,* 355 Md. 651, 662–63, 736 A.2d 285, 291 (1999); *Campbell v. State,* 325 Md. 488, 508–09, 601 A.2d 667, 677 (1992). Those cases are inapplicable to the case at bar, as here there was ample evidence to support assault with intent to murder, and appellant was tried and convicted for that crime.

cerning motions other than mandatory motions, provides as follows:

"A motion asserting failure of the charging document to show jurisdiction in the court or to charge an offense may be raised and determined at any time. Any other defense, objection, or request capable of determination before trial without trial of the general issues, shall be raised by motion filed at any time before trial."

The question is whether appellant's challenge falls within the purview of Rule 4–252(d), and if it does, then it presumably may be asserted at any time. Use of the word "jurisdiction" in the Rule refers to subject matter jurisdiction of the court, not the exercise of jurisdiction by a court. Subject matter jurisdiction, as discussed earlier, refers to whether the court is the appropriate forum for a class of cases and the exercise of the jurisdiction refers to whether the court has the authority to decide a particular case within the class of cases for which the court has subject matter jurisdiction. For example, if an indictment charges one offense only, that of a violation of Maryland Code (1977, 2009 Repl.Vol., 2010 Cum.Supp.) Transportation Article, § 21–403(c)(1) (requiring that a driver "[s]top in obedience to the stop sign"), a case within the exclusive jurisdiction of the district court, the circuit court lacks subject matter jurisdiction to hear that case. Another example might be a case in which a juvenile of thirteen years of age is charged with an offense in the circuit court, as opposed to in the juvenile court, where there is no statute providing for jurisdiction of the case in the circuit court. A challenge to the jurisdiction of the circuit court to hear that case may be raised at any time.

Under Maryland Rule 4–252(d) a motion asserting the failure of a charging document to charge an offense can also be raised at any time. An example of a charging document that fails to charge an offense is where an indictment alleges a common law offense that was abrogated by the enactment of a statute. *See, e.g., Robinson v. State,* 353 Md. 683, 686–87, 728 A.2d 698, 699 (1999); *State v. Chaney,* 304 Md. 21, 25–27, 497 A.2d 152, 154 (1985). Similarly, an assertion that the charged

offense was not actually a crime may be considered at any time. *Lane v. State,* 348 Md. 272, 278–79, 703 A.2d 180, 183–84 (1997) (holding that the Court must consider appellant's argument that attempted rape by a husband of his wife is not a crime).

Appellant's situation, however, does not fall into either of these categories listed in Rule 4–252(d); the circuit court clearly had subject matter jurisdiction to adjudicate the crime of assault with intent to murder, and at the time of the offense, assault with intent to murder was a crime in Maryland. At best, appellant can argue only that the indictment was insufficient, but as discussed above, such insufficiency does not destroy subject matter jurisdiction to allow for a motion under Rule 4–252(d). Other courts which have considered similar issues have pointed out that subject matter jurisdiction of a court and sufficiency of an indictment are two different matters, and the blending of those concepts can only serve to confuse the issues. *See State v. Parkhurst,* 845 S.W.2d 31, 34–35 (Mo.1992). The Supreme Court of Missouri explained as follows:

> "When the issue is raised for the first time after verdict, the indictment or information will be deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced. In either event, a defendant will not be entitled to relief based on a post-verdict claim that the information or indictment is insufficient unless the defendant demonstrates actual prejudice."

*Id.* at 35 (footnote omitted).

For all of the foregoing reasons, we shall dismiss this appeal.

*APPEAL DISMISSED. COSTS TO BE PAID BY APPELLANT.*