*Davis v. State*
No. 2162, Sept. Term 2023
Opinion by Leahy, J.

**Criminal Law > Review > Determination and Disposition of Cause > Mandate and Proceedings in Lower court**
Prior summary dismissal of an application for leave to appeal, without an assignment of reasons, did not implicate the law of the case doctrine. *See Nichols v. State*, 461 Md. 572, 593 (2018); *State v. Garnett*, 172 Md. App. 558, 562 (2007). When an appellate court denies an application for leave to appeal and does not state its reasons for doing so, the court "tells no one what [it] thought of any particular allegation in the application." *Hernandez v. State*, 108 Md. App. 354, 365 (1996). The denial of Davis's application for leave to appeal, without a statement of reasons, merely told the parties: "[t]here shall be no appeal in this case." *State v. Hernandez*, 344 Md. 721, 728 (1997). In essence, the Court expressly *declined* to "resolve" any of the contentions raised in the application for leave to appeal.

**Criminal Law > Pleas > Plea of Guilty > Voluntary Character > Representations, Promises, or Coercion; Plea Bargaining**
In concert with Rule 4-242, Rule 4-243 is designed to ensure that defendants' due process rights are protected during plea proceedings. The Supreme Court of Maryland has held that "[t]he principal purpose of Rule 4-243 is to eliminate the possibility that the defendant may not fully comprehend the nature of the agreement before pleading guilty." *Cuffley v. State*, 416 Md. 568, 581 (2010). Rule 4-243 is thus designed to ensure that plea bargaining does not "offend notions of due process." *Id.*

**Indictments and Charging Instruments > Requisites and Sufficiency of Accusation > In General > Purpose of Accusation**
The filing of a charging document also serves to "protect the defendant against multiple prosecutions for the same offense and thereby vindicate the proscription against double jeopardy." *Shannon v. State*, 468 Md. 322, 327 (2020). By operation, Rules 4-242 and 4-243 protect against double jeopardy in a manner similar to that of a charging document. Under Rule 4-242(c), the court must determine and announce on the record that the defendant's plea is voluntary, made with an understanding of the nature of the charge and the consequences of the plea, and factually supported. Further, under Rule 4-243(d), all plea agreement proceedings, "including the defendant's pleading, advice by the court, and inquiry into the voluntariness of the plea or a plea agreement shall be on the record." Thus, in all convictions obtained pursuant to a valid plea agreement, all pertinent details of the crime of which the defendant was convicted will be on the record. *See State v. Williams*, 255 Md. App. 420, 457 (2022) ("The terms of a plea agreement 'are to be made plain on the record, in the presence of the defendant, for the court to hear and accept or reject.'" (quoting *Cuffley v. State*, 416 Md. 568, 579 (2010))).

**Indictments and Charging Instruments > Amendment > In General**

The authority to amend a charging document under Rule 4-243 is not coextensive with the authority to amend under Rule 4-204. This is because the dynamics of plea bargaining are fundamentally different from those of a trial. Rules 4-242 and 4-243 effectively preclude the possibility that a defendant or their counsel could be unfairly surprised by the addition of a new charge to a charging document because they require that the defendant understand the nature and consequences of a crime before entering a plea to it. *See Parker v. State*, 160 Md. App. 672, 679 (2005); *Cuffley v. State*, 416 Md. 568, 581 (2010).

**Indictments and Charging Documents > In General > Constitutional and Statutory Provisions > Applicability of federal constitution to states**

As we recognized in *Moaney v. State*, 28 Md. App. 408, 412 (1975), in Maryland, "there is no specific constitutional right to indictment by a grand jury." And while there was a right to grand jury indictment for all felonies at common law, through amendments to both the Maryland Code and Maryland Rules, Maryland has abrogated the common law right to indictment by grand jury. *Id.* at 414-15. As a result, "[w]hether to seek indictment or to charge by information is now at the election of the State's Attorney[,]" subject only to conditions specified by legislative enactment, judicial opinion, or the Maryland Rules. *Id.* at 414; *see Brown v. State*, 454 Md. 546, 556 (2017) (recognizing that common law right to indictment by grand jury has been abrogated). Both Rule 4-204 and Rule 4-243 provide for the amendment of charging documents generally and draw no distinctions between indictments and other forms of charging document. There is no indication in either Rule that action by a grand jury is necessary in case of an amendment. Accordingly, we hold that regardless of the form of charging document used, the State may bring new charges against a defendant by amendment as a condition of a plea agreement.

**Sentencing and Punishment > Reconsideration and Modification of Sentence > Grounds and Considerations > Illegal sentence**

The terms of the State's proposed plea agreement were all placed on the record as required by Rule 4-243(d). Those terms included two of the "proper conditions" for entering plea agreements under Rule 4-243(a)(1) – that the State would "amend the charging document to charge a specified offense or add a specified offense" (first-degree assault) and "enter a nolle prosequi" for all remaining charges in case no. K-14-2749. The court and Davis's counsel jointly advised him on the elements of first-degree assault and confirmed his understanding of the crime. This ensured that Davis understood the nature of the charges against him and the consequences of entering a plea to those charges, as required by Rule 4-242. *Parker v. State*, 160 Md. App. 672, 679 (2005). The court also confirmed that Davis understood the rights he was waiving by entering an *Alford* plea, *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), and intended to enter his plea voluntarily. *Parker*, 160 Md. App. at 679. Finally, the court determined that there was a sufficient factual basis to support Davis's plea to first-degree assault. *Id.* As the court properly applied the procedural safeguards of Rules 4-242 and 4-243, Davis was properly charged with and convicted of first-degree assault.

Circuit Court for Baltimore County
Case No. 03-K-14-002749

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2162

September Term, 2023

_____

VINCENT DAVIS, JR.

v.

STATE OF MARYLAND

_____

Leahy,
Reed,
Eyler, James R.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Leahy, J.

_____

Filed: September 3, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Appellant Vincent Davis, Jr., appeals from the denial of his Motion to Correct Illegal Sentence in the Circuit Court for Baltimore County. Davis was arrested on May 8, 2014, following issuance of an arrest warrant that charged him with first, third, and fourth-degree sexual offense; second-degree assault; and theft under $1,000. A grand jury in Baltimore County then issued a nine-count indictment on those charges, as well as sexual offense in the second degree, kidnapping, false imprisonment, and robbery.[1]

Pursuant to a plea agreement with the State, on May 4, 2015, Davis entered an *Alford* plea to *first-degree assault*—which was not originally charged in the grand jury indictment. Under the terms of this plea agreement, the State agreed to amend the first-degree sexual offense charge in the indictment to a first-degree assault charge and nolle pros the remaining charges.[2] Davis's trial counsel explained the elements and consequences of a first-degree assault conviction to Davis at the plea hearing before he entered his *Alford* plea,[3] and the court confirmed that Davis understood the consequences and voluntarily

[1] The statutes codifying the criminal offenses of sexual offense in the first and second degrees were repealed by the legislature in 2017. 2017 Md. Laws, ch. 161 (S.B. 944); 2017 Md. Laws, ch. 162 (H.B. 647). Sexual offense in the first degree is now codified as part of first-degree rape under Maryland Code (2002, 2021 Repl. Vol.), Criminal Law Article ("CR") § 3-303(a). Likewise, the definition of sexual offense in the second degree is now largely embodied in the crime of second-degree rape under CR § 3-304(a).

[2] A *nolle prosequi*, or 'nolle pros,' refers to the decision of a prosecuting attorney, "free from judicial control and not dependent upon the defendant's consent," to abandon prosecution of a particular charge in a charging document. *Ward v. State*, 290 Md. 76, 83 (1981).

[3] The term "*Alford* plea" is a legal eponym drawn from the United States Supreme Court case, *North Carolina v. Alford*, 400 U.S. 25 (1970). The term refers to "a guilty plea containing a protestation of innocence," and functionally operates as a guilty plea in that it limits appeals "to jurisdictional defects and challenges based on the propriety of the trial

intended to enter the plea.   After the State read an agreed statement of facts into the record, Davis was convicted of first-degree assault.  A few months later he was sentenced to twenty years' incarceration for this conviction.[4]

On November 15, 2023, Davis filed a Motion to Correct Illegal Sentence under Maryland Rule 4-345(a).  He argued that his sentence for first-degree assault was illegal because that crime was not included on the arrest warrant or in the grand jury's indictment, and the State never obtained a charging document that charged him with first-degree assault.  The circuit court denied Davis's motion on December 11, 2023, and Davis timely appealed.  Representing himself, Davis reasserts his challenge to his sentence for first-degree assault and urges that we reverse the circuit court's denial of his Motion to Correct Illegal Sentence.

We hold that Davis's sentence for first-degree assault is not inherently illegal under Rule 4-345(a).  At the threshold of our discussion, we reject the State's contention that we are barred from considering Davis's illegal sentence argument by the law of the case doctrine.  Davis's argument has not been resolved by an appellate court in a prior appeal within this case.  Proceeding to the merits, we determine as a matter of first impression that Maryland Rule 4-243 permits the State, as part of a plea agreement with a defendant, to

---

court's acceptance of the plea." *Bishop v. State*, 417 Md. 1, 19-20 (2010) (quoting *Marshall v. State*, 346 Md. 186, 189 n.2 (1997)).

[4] At this plea hearing, Davis also entered *Alford* pleas to two first-degree burglaries (case nos. 03-K-14-002745 and 03-K-14-002747), pursuant to a global plea agreement in which the State agreed to nolle pros the remaining charges in those underlying indictments. Those convictions are not at issue in this appeal.

charge a crime by amendment to an existing charging document. It is evident from the transcript of Davis's plea hearing that the State properly charged Davis with first-degree assault as a condition of a valid plea agreement between the parties. As such, the court did not err in denying Davis's Motion to Correct Illegal Sentence.

## BACKGROUND[5]

On July 6, 2013, at approximately 1:00 a.m., V.,[6] a 34-year-old woman, was walking home in Baltimore County, Maryland. As V. was approaching a church, Davis "grabbed her from behind and put her in a bear hug[,]" and the two individuals began to struggle. Davis eventually overpowered V. and dragged her into a dark wooded area near the church. V. tried to scream, "but her mouth was covered and then her throat was covered" as Davis continued to drag her into the woods. V. and Davis then fell to the ground, where they continued to struggle. V. lost her sweatshirt and shoes during this struggle. Eventually, V. managed to get to her feet and ran barefoot toward a 7-Eleven across the street. V. asked for a phone to report she had been attacked, and a bystander who had already called 911 handed her his cell phone.

After the police arrived at the 7-Eleven, V. took them to the area she identified as the scene of the crime. There, police found V.'s sweatshirt, shoes, and her hairpiece. They did not find V.'s missing purse. V. was then taken, along with the items recovered by the

---

[5] The facts leading to the warrant for Davis's arrest are drawn from the agreed statement of the facts presented to circuit court on May 4, 2015, in support of the *Alford* plea.

[6] To protect her privacy, we choose to identify the victim in this case by the initial "V.," which has no correlation to her actual name.

3

police, "to GBMC for a [Sexual Assault Forensic Exam]." Pictures were taken of various injuries V. sustained during the struggle with Davis, including "red marks across her throat, abrasions to her knee, and abrasions to her foot." V.'s sweatshirt contained what the Baltimore County Crime Lab later identified as bloodstains. A later comparison of DNA collected from the bloodstain to DNA collected from Davis produced "an exact match."

The District Court of Maryland, Baltimore County, issued an arrest warrant for Davis on May 6, 2014, and he was arrested two days later. On May 27, 2014, a grand jury indicted Davis and charged him with sexual offense in the first, second, third, and fourth degrees; kidnapping; false imprisonment; robbery; theft under $1,000; and second-degree assault.

### Plea Hearing

Davis appeared for a plea hearing on May 4, 2015—the date which had originally been set for his trial. At the beginning of the plea hearing, Davis's counsel informed the court that the State had proposed a plea agreement that would address all of the charges against him, including the burglary and kidnapping charges. Counsel represented to the court:

> I've advised Mr. Davis of that respective plea offer. We've had opportunities this morning to discuss that respective plea offer. It's my understanding that Mr. Davis is wanting to ask the Court for a postponement stating that he is not physically and mentally prepared to proceed to trial.

The court then asked Davis a series of questions about his request for a postponement and his satisfaction with his counsel. After determining that there was neither good cause for postponement, nor a request by Davis to discharge his counsel, the court took a recess and

4

asked that counsel "come back in [c]hambers" once they had figured out "what Mr. Davis intends to do."

Following that recess, Davis's trial counsel informed the court that the State had made an offer to amend the first-degree sexual offense charge to first-degree assault:

> Your Honor, I certainly appreciate all of the opportunity the Court has afforded us to have lengthy discussions both allowing Mr. Davis'[s] family, who is present here in the courtroom, to speak with him prior to the luncheon recess and then a continuation subsequent to that, and my conversations with him. Mr. Davis -- the State has made a subsequent offer of First[-]Degree Assault and two counts of Burglary. Mr. Davis would enter a plea as to those respective offenses. The Defense agrees to amend Count 1, the indictment ending in 2749 to be a First[-]Degree Assault. We have no objection to that amendment. Both the State and the Defense are free to argue. I would be asking actually for a Presentence Investigation and a Psychological, Court Medical Psychological.

The State then elaborated:

> [THE STATE]: Your Honor, just to make sure we have all of the cases ready that we're calling, so we're calling K-14-2749, amending Count 1 to a First[-]Degree Assault.
>
> THE COURT: All right.
>
> [THE STATE]: Upon acceptance and entry of the guilty finding, the State would nolle pros the balance of the counts in that case. We're also calling K-14-2747 and K-14-2745.
>
> [DAVIS'S COUNSEL]: 2745, and what was the other one?
>
> [THE STATE]: 47.
>
> [DAVIS'S COUNSEL]: Thank you.
>
> [THE STATE]: And we're -- we believe a guilty plea will be tendered to Count 1 in both of those, which are burglaries. Again, should the Court accept the guilty plea and they'd be entered in, the balance of those charges would be nolle prossed. At sentencing the balance of the other burglary cases pending, that would be three additional cases, it's my understanding would all be nolle prossed, that is the burglaries that are scheduled for today. At

5

sentencing, the State will tell the Court about one other burglary, and that's K-14-2748. And we also have agreed that we can present crime scene pictures from all of the burglaries and, of course, the current case, the first[-]degree assault. At sentencing the State will be asking for 50 years, the Defendant is certainly free to argue for anything lesser. We did a cursory workup of the Guidelines which we will have a more in-depth one and make sure we got it right, but it looks like it's 18 to 34, Your Honor.

Before he entered the *Alford* plea, Davis engaged in an extended colloquy with his trial counsel and the court about the elements and potential consequences of a first-degree assault conviction:

> THE COURT: Mr. Davis, I need to ask you a series of questions, much like I did this morning to make sure you fully understand what you are doing and the rights you are waiving. Can you tell me, sir, how old you are?
>
> [DAVIS]: 44.
>
> THE COURT: And how far you went in school?
>
> [DAVIS]: College.

After the court established that Davis was not under the influence and could understand what was going on in the proceedings, the court continued:

> THE COURT: Okay. You understand you're entering guilty pleas to three separate things. In the case that was scheduled for trial here today, the State has amended the kidnapping charge and you are pleading guilty -- amended the first count, you're pleading guilty to a First[-]Degree Assault; do you understand that?
>
> [DAVIS]: Yes.
>
> THE COURT: All right, and you talked to [Davis's counsel] about what a First[-]Degree Assault means and what the State would have to prove to convict you of that?
>
> [DAVIS]: Well, we didn't discuss in full.
>
> [DAVIS'S COUNSEL]: Remember that we talked about assault is placing someone in fear of bodily contact, that's a Second[-]Degree Assault, or

6

actually having offensive contact with them without their consent. First[-]Degree Assault is when there's either been a weapon used or there was such a grave assault that it caused or could have caused serious bodily harm. It's the same thing, placing someone in fear of bodily contact without the consent and of such nature that it could cause serious injury. Do you understand that? The maximum penalty is 25 years.

THE COURT: You're nodding your head yes; do you understand those things?

[DAVIS]: Yes.

\*\*\*

THE COURT: [Davis's counsel], do you believe he understands the nature and elements of the offenses and the possible consequences?

[DAVIS'S COUNSEL]: I do, Your Honor. I have met with him on several occasions, reviewed the indictment and discovery, and we have discussed it in great detail.

The court also engaged Davis in an extended colloquy to ensure he understood the rights he was waiving by entering an *Alford* plea rather than proceeding to trial and whether he was satisfied with the representation by his counsel. Then the court confirmed that Davis voluntarily intended to enter his pleas:

THE COURT: Are we proceeding by an *Alford* plea on the first case? That was what was discussed, but it wasn't clarified at the time of the plea.

[DAVIS'S COUNSEL]: We can proceed on an *Alford* Plea.

[THE STATE]: That was my understanding. I believe I should have said that.

THE COURT: That was my understanding also. All right, Mr. Davis, has anyone forced or threatened you to get you to enter this plea?

[DAVIS]: No.

THE COURT: And have you been promised anything other than the State is agreeing to drop the 22 other counts and to drop the other charges? You're shaking your head no that nothing else has been promised. You told me earlier -- your attorney told me you're proceeding by what's called an *Alford*

7

Plea. What that means generally, you're not admitting that you're guilty of this offense, but in light of the evidence that the State has and the offer that's being made, you think it's in your best interest to proceed this way. Is that what you're doing here today?

[DAVIS]: Yes.

THE COURT: Okay. Okay. I find a knowing, voluntary and intelligent waiver of rights with a clear understanding of the nature of these pleas along with the possible consequences.

[THE STATE]: Your Honor, I'm just not sure if we heard maximum sentence, maybe I missed that.

THE COURT: I did.

[THE STATE]: Okay, thank you.

THE COURT: I did. It was 25 on the First[-]Degree Assault.

The State then read an agreed statement of facts into the record. Afterward, the court stated that those facts were "certainly sufficient to support" Davis's plea to first-degree assault, and found Davis guilty "as to the amended Count 1[.]"

Several months after the plea hearing, on August 14, 2015, Davis received a sentence of twenty years in prison for first-degree assault. Davis subsequently filed a Motion for Modification and Reconsideration of Sentence, which the circuit court denied less than a month later.

**Postconviction Proceedings**

Nearly six years later, on May 13, 2021, Davis filed a Petition for Post Conviction Relief ("Petition") pursuant to Title 7, Chapter 100 of the Maryland Code (2001, 2018 Repl. Vol), Criminal Procedure Article, ("CP"), alleging, among other things, that his sentence for first-degree assault was illegal "because the State's effort to amend the charges

8

was ineffective and therefore failed to confer jurisdiction to the court." Davis argued that although "amendments of a charging document are permissible, wholesale creation of a new count requires the filing of either a criminal information or superseding indictment."

Davis analogized his case to *Johnson v. State*, 427 Md. 356 (2012), in which the Supreme Court of Maryland held that Maryland Rule 4-204 "provides the exclusive method for amending [] charges and therefore there can be no amendments outside the confines of the rule." Davis argued that Rule 4-204 only permits amending an *existing* charge, not *adding* a *new* charge to an existing charging document. He acknowledged that the *Johnson* Court "recognized a possible exception to the rule" that would permit adding charges for "lesser included offenses of crimes charged in the indictment." (Quoting *Johnson*, 427 Md. at 377 n.12). However, Davis argued that this exception did not apply to his first-degree assault conviction, because "both crimes contain elements that the other does not." Davis urged the court to vacate his *Alford* plea on the ground that the State could not add the first-degree assault charge to an existing indictment by amendment.

The State countered that Davis was drawing on "twisted logic" by arguing against an amendment that he "asked for, received and benefitted from" as part of a voluntary plea deal. Because Davis consented to adding a charge of first-degree assault to the indictment, the State insisted that he had "no legal basis to complain." The State highlighted language in *Johnson* stating that the "purpose of Maryland Rule 4-204 . . . is to prevent any unfair surprise to the defendant and his counsel."

On January 13, 2023, the circuit court denied Davis's Petition. Addressing Davis's argument that his plea and sentence were illegal, the circuit court stated:

9

Rule 4-204 provides that "the court at any time before verdict may permit a charging document to be amended, except that if the amendment changes the character of the offense charged, the consent of the parties is required . . . ."

Assuming that the amendment here changed the character of the offense (and it most likely did not), Petitioner not only consented to the amendment, he appears, in context, to have asked for the amendment himself. First[-]degree sexual offense carries a maximum sentence of life incarceration and first-degree assault, 25 years. It is improbable that the State asked to amend the charge, and clear and plain that Petitioner consented to it.

Post-conviction relief is denied because the Petitioner consented to the amendment and because, in any event, the amendment did not change the character of the charge.

On February 13, 2023, Davis filed an application for leave to appeal the denial of his Petition ("Application") in the circuit court under CP § 7-109. He largely repeated the arguments presented in his Petition, emphasizing that the "wholesale creation of a new charge required the filing of either a criminal information or superseding indictment." We denied Davis's Application on May 24, 2023, stating:

Having read and considered the application of Vincent Davis for leave to appeal from a denial of petition for post-conviction relief, the application is hereby denied.

Davis then filed the underlying Motion to Correct Illegal Sentence in the circuit court on November 15, 2023, again arguing that the State improperly added a first-degree assault charge to the grand jury indictment, and that his sentence for that charge was illegal. The circuit court denied that motion on December 11, 2023. Davis timely appealed to this Court.

We incorporate additional facts, where appropriate, in the remainder of this opinion.

## DISCUSSION

A sentence that is illegal under Maryland Rule 4-345(a) "is subject to correction at any time." *State v. Crawley*, 455 Md. 52, 66 (2017); *see* Rule 4-345(a) ("The court may correct an illegal sentence at any time."). "The principle that a substantively illegal sentence must be corrected applies regardless of whether the sentence has been negotiated and imposed as part of a binding plea agreement." *Crawley*, 455 Md. at 67. A sentence's legality under Rule 4-345(a) is a question of law that we review *de novo*. *Id.* at 66.

In *Johnson v. State*, 427 Md. 356, 375 (2012), the Supreme Court of Maryland held that Maryland Rule 4-204 does not permit a new criminal charge to be added to an existing charging document by amendment. The purported "amendment" in *Johnson* was made in the middle of trial, when a verdict sheet presented to the jury included assault with intent to murder – a crime never before included in the indictment. *Id.* at 363. The Court held that the defendant "was not properly on notice of the charge of assault with intent to murder," and declared the defendant's subsequent conviction and sentence on this charge illegal under Rule 4-345(a). *Id.* at 377. The issue on which this appeal turns, however, is whether a sentence imposed for a crime that is added to a charging document as a condition of a plea agreement with the State, at the request of or with the defendant's approval, is likewise illegal under Rule 4-345(a).

The State avers that we are barred from even considering Davis's illegal sentence claim by the doctrine of the law of the case. We disagree and hold that the doctrine of the law of the case does not apply to this Court's summary denial of Davis's application for leave to appeal. On the merits, however, we agree with the State and hold that Rule 4-243

11

permitted it to add a new charge of first-degree assault to the indictment as a condition of its plea agreement with Davis. In the context of a plea agreement, unlike the situation presented in *Johnson*, a defendant's right to be informed of the charges is protected by Rules 4-242 and 4-243. We hold that Davis was properly charged with first-degree assault and that his sentence for first-degree assault is therefore not illegal under Rule 4-345(a).

## I.

## LAW OF THE CASE DOCTRINE

### A. Parties' Contentions

Quoting our decision in *State v. Garnett*, 172 Md. App. 558, 562 (2007), the State observes that "the law of the case doctrine prevents relitigation of an illegal-sentence argument that has been 'presented to and rejected by an appellate court.'" According to the State, "the claim that Davis now raises is the same one" that Davis raised in his Petition – "that the amendment of the charging document to charge first-degree assault rendered his sentence illegal." In the State's view, this argument was already rejected by this Court when we denied Davis's Application.

Davis replies that the law of the case doctrine "is not an inexorable command" or "a fixed, immutable doctrine." He further argues that the doctrine does not apply in this case because our denial of his Application provided "no written decision or opinion that was decided upon a rule of law." In Davis's view, "[t]here was no 'law of the case' rendered" by that decision because we never "settled or resolved" his illegal sentence claim. Davis also contends that *Johnson v. State*, 427 Md. 356 (2012), is a "controlling authority" that

12

addresses "the same issues" presented in this case and "makes reconsideration appropriate."

### B. Navigating the Tension Between Maryland Rule 4-345(a)("Illegal Sentence") and the Law of the Case Doctrine

Our decisional law instructs that under the law of the case doctrine, "once an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be the law of the case." *Scott v. State*, 379 Md. 170, 183 (2004). The doctrine "is a judicial creation borne of procedure and convenience, rather than an inflexible rule of law." *Stokes v. American Airlines, Inc.*, 142 Md. App. 440, 446 (2002). It essentially operates "as a corollary to *res judicata*"[7] that is "keyed specifically to appellate decisions," *Holloway v. State*, 232 Md. App. 272, 282

---

[7] The doctrine of *res judicata*, or claim preclusion, prevents two parties from litigating a suit on a cause of action when those same parties, or their privies, previously litigated a suit on the same cause of action to a judgment on the merits. *Seminary Galleria, LLC v. Dulaney Valley Improvement Ass'n, Inc.*, 192 Md. App. 719, 734 (2010). It is similar to the doctrine of collateral estoppel, or issue preclusion, which "prevents the relitigation of [an] issue when" (1) an identical issue was decided in a prior adjudication; "(2) there was a final judgment on the merits in the prior adjudication; (3) the party against whom the claim is asserted" in the present case "is either the same party as in the prior adjudication, or is in privity with a party to the prior adjudication; (4) the party against whom the claim is asserted received a fair opportunity to be heard on the issue." *Augustine v. Wolf*, 264 Md. App. 1, 12 (2024).

Although the law of the case doctrine, *res judicata*, and collateral estoppel all operate to preclude successive litigation of matters previously decided, they do not apply in the same situations. Collateral estoppel applies to *specific facts or issues* conclusively decided in a prior case, while *res judicata* "operates to preclude all matters which could have been litigated" in prior litigation on the same *cause of action*, "thereby completely obviating any subsequent claim on the same cause of action." *Id.* at 13 n.9. The law of the case doctrine is distinct from both, in that it "precludes a party from re-litigating an issue of which an appellate court in the *same case* has already disposed," as opposed to precluding relitigation of an issue disposed of in a *prior* case. *Elec. Gen. Corp. v. Labonte*, 454 Md. 113, 142 (2017).

13

(2017), and "applies to court decisions made in the same, rather than a subsequent, case." *Scott*, 379 Md. at 182 n.6. While "'[d]ecisions rendered by a prior appellate panel will generally govern the second appeal' at the same appellate level as well," *Scott*, 379 Md. at 184 (alteration in original) (quoting *Hawes v. Liberty Homes, Inc.*, 100 Md. App. 222, 231 (1994)), the doctrine "does not apply to a trial court's ruling[.]" *Nichols v. State*, 461 Md. 572, 591 (2018) (citing *Scott*, 379 Md. at 184-85). "[A]s a general principle, one judge of a trial court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court." *Scott*, 379 Md. at 184 (quoting *Gertz v. Anne Arundel Cnty.*, 339 Md. 261, 273 (1995)). Furthermore, the law of the case doctrine does not apply to a prior decision of an appellate court within the same case when "the previous decision is incorrect because it is out of keeping with controlling principles announced by a higher court and following the decision would result in manifest injustice." *Id.* at 184.

Maryland Rule 4-345(a) specifies that the "court may correct an illegal sentence at any time." In *Scott*, the Supreme Court of Maryland recognized the inherent tension between Rule 4-345(a), which provides "a method of opening a judgment otherwise final and beyond the reach of the court[,]" and the law of the case doctrine's prohibition on relitigating an issue decided in a prior appeal. 379 Md. at 182 n.6 (quoting *State v. Griffiths*, 338 Md. 485, 496 (1995)). The Court decided this tension did not "render[] the doctrine of law of the case inapplicable to motions to correct an illegal sentence." *Id.* at 183.

Nevertheless, a pair of subsequent Maryland decisions clarified that while the law of the case doctrine may apply to bar a motion to correct an illegal sentence, the doctrine operates differently in that context. Ordinarily, the law of the case doctrine applies not

14

only when an appellate court has "ruled upon a question properly presented" in a previous appeal within the same case, but also, to bar any ruling that would be "contrary to a question that could have been raised and argued in that appeal on the then state of the record[.]" *Martello v. Blue Cross and Blue Shield of Md., Inc.*, 143 Md. App. 462, 474 (2002) (quoting *Fidelity-Baltimore Nat'l Bank & Trust Co. v. John Hancock Mut. Life Ins. Co.*, 217 Md. 367, 372 (1958)). However, in *State v. Garnett*, 172 Md. App. 558, 562 (2007), this Court discerned that "Rule 4-345(a) would be meaningless if the law of the case doctrine were extended to sentences that could have been – but were not – challenged as illegal at the time an appellant filed his or her first appellate brief in this Court."

In *Garnett*, the defendant had been found guilty but not criminally responsible by reason of mental disorder for "the damage she caused to five police cruisers belonging to the Maryland State Police" and one privately-owned vehicle. *State v. Garnett*, 384 Md. 466, 469 (2004). Garnett was ordered to pay restitution to the Maryland State Police and owner of the privately-owned vehicle. *Id.* at 471. Thereafter, she filed for bankruptcy, and the State sought to garnish her wages to satisfy the restitution judgment. *Id.* at 472. The circuit court reasoned that as Garnett "could not be punished" because she had been "found not criminally responsible," the restitution judgment was a civil sanction, which would be discharged during Garnett's bankruptcy proceedings. *Id.* at 472-73.

The Supreme Court of Maryland granted certiorari "prior to any proceedings in the intermediate appellate court" and reversed, holding that the restitution judgment was "a criminal sanction" which "was not dischargeable under the Bankruptcy Code." *Id.* at 473. On remand to the circuit court, Garnett filed a "Motion to Dismiss and to Correct Illegal

15

Sentence under Rule 4-345(a)," arguing that "the restitution order was illegal because she was found not criminally responsible" for the damage she caused. *Garnett*, 172 Md. App. at 560.

The circuit court granted the motion, and the State appealed to this Court, arguing that because Garnett could have raised her illegal sentence argument earlier in the proceedings, but failed to do so, she was barred by the law of the case doctrine from contesting the legality of the restitution judgment under Rule 4-345(a). *Id.* at 561. We disagreed, and held that as Rule 4-345(a) permits the court to correct an illegal sentence at any time, a defendant must be permitted to "assert an 'illegal sentence' argument that was not previously *addressed* by an appellate court." *Id.* (emphasis added). In other words, a defendant's Rule 4-345(a) illegal sentence argument is barred only when it has been "presented to and rejected by an appellate court," and not when it merely *could* have been presented to such a court. *Id.* at 562.

More recently, in *Nichols v. State*, 461 Md. 572 (2018), the Supreme Court of Maryland further circumscribed the law of the case doctrine in the context of Rule 4-345(a) motions to correct an illegal sentence. Nichols was originally convicted of, among other crimes, conspiracy to commit false imprisonment. 461 Md. at 579. He appealed to this Court, where he argued, among other things, that his sentence for conspiracy to commit false imprisonment was illegal because it exceeded the statutory maximum sentence for kidnapping. *Nichols v. State*, No. 169 Sept. Term 2014, 2016 WL 1622079, at *5 (Md. Ct. Spec. App. Feb. 4, 2016). Nichols based this argument on the theory that conspiracy to commit false imprisonment is a lesser-included offense of conspiracy to commit

16

kidnapping, but we rejected that theory. *Id.* We vacated some of Nichols's other convictions and sentences, however, and remanded for resentencing. *Id.*

During resentencing, Nichols again challenged his sentence for conspiracy to commit false imprisonment, but this time, he based his argument on the fact that his sentence exceeded the statutory maximum for the crime of false imprisonment itself. *Nichols*, 461 Md. at 580. Nichols cited Maryland Code (2002, 2012 Repl. Vol.), Criminal Law Article ("CR") § 1-202 for the proposition that a sentence for conspiracy "may not exceed the maximum punishment for the crime that the person conspired to commit." *Id.* (quoting CR § 1-202). The circuit court rejected that argument, and Nichols appealed again. We held that the law of the case doctrine barred the circuit court from considering Nichols's argument, reasoning that we had already rejected a challenge to his sentence for conspiracy to commit false imprisonment. *Id.* at 581.

The Supreme Court of Maryland reversed. The Court observed that Nichols's first and second appeals "clearly raised different issues." *Id.* at 596. Nichols's first argument – that his conspiracy to commit false imprisonment sentence was illegal because it exceeded the maximum sentence for conspiracy to commit kidnapping – was based on a theory that "conspiracy to commit false imprisonment was a lesser-included offense of conspiracy to commit kidnapping." *Id.* By contrast, Nichols's second argument – that his sentence was illegal because it exceeded the maximum sentence for *false imprisonment* – was based on a theory that his sentence violated CR § 1-202. *Id.* As Nichols had not argued that CR § 1-202 was a basis for declaring his sentence illegal in his first appeal, the Supreme Court ruled that this Court had never "resolved the contention." *Id.* at 594.

17

*Garnett* and *Nichols* instruct that before applying the law of the case doctrine to bar consideration of an illegal sentence challenge, the court must find that the same argument has already been presented and "resolved" in a prior appeal within the same case. *Nichols*, 461 Md. at 593; *see Garnett*, 172 Md. App. at 562 (holding that law of the case doctrine bars consideration of "an issue as to the legality of a sentence" only when the same issue has "been presented to and rejected by an appellate court" in prior appeal within same case). The sharpened issue before us, then, is whether, in denying Davis's Application, this Court rejected or otherwise "resolved" Davis's illegal sentence claim. *Nichols*, 461 Md. at 593.

### C. Applying Law of the Case Doctrine to a Summary Denial of an Application for Leave to Appeal

The State reasons that we "rejected" the argument Davis raises in this appeal when we denied his Application. Yet our order denying Davis's Application states only that we "read[,]" "considered[,]" and "denied" it. *Davis v. State* (*Davis I*), No. 2347, September Term 2022, slip op. at 2 (filed May 24, 2023). Because Davis's Application could have been denied on various grounds, this summary denial "tells no one what we thought of any particular allegation in the application[,]" *Hernandez v. State*, 108 Md. App. 354, 365 (1996).

Although we have not found a reported decision in Maryland that has addressed whether the doctrine of the law of the case applies to the summary denial of an application for leave to appeal, our decision in *Hernandez v. State* is instructive. In *Hernandez*, this Court considered whether an appellate court's summary denial, "without an assignment of

18

reasons," of an application for leave to appeal renders the alleged errors raised in that application "finally litigated" within the meaning of the Uniform Postconviction Procedure Act ("PCPA"). *Id.* at 357. When this Court decided *Hernandez*, the PCPA "authorize[d] certain persons to seek PCPA relief 'provided the alleged error has not been previously and finally litigated or waived.'" *Id.* at 361 (quoting Md. Code, art. 27, § 645A(a)).[8] Section 645A(b) of the PCPA provided that an issue has been "finally litigated" when "an appellate court of the State has rendered a decision on the merits thereof[.]" *Id.* (quoting § 645A(b)).

Hernandez had originally pled guilty to one count of conspiracy and one count of possession with intent to distribute, but later moved to withdraw his guilty plea "on the ground that it was involuntary." *Id.* at 356. The trial court denied Hernandez's motion, and after his guilty plea was entered, he filed an application for leave to appeal. *Id.* at 357. This Court then "summarily denied" the application "without an assignment of reasons." *Id.* Hernandez subsequently filed a petition in the circuit court under the PCPA in which he raised several arguments, including, once again, that his guilty plea was involuntary. *Id.* at 357. The circuit court denied the petition, ruling in pertinent part that "the issue raised with respect to the voluntariness of the guilty plea had been finally litigated" when this Court denied Hernandez's application for leave to appeal. *Id.* at 358. Hernandez then applied for leave to appeal again, and this Court granted the application.

---

[8] Hernandez sought postconviction relief under former Article 27, section 645A, of the Maryland Code. This provision was repealed on Oct. 1, 2001, 2001 Md. Laws, ch. 10 (S.B. 1), and replaced by CP §§ 7-101 – 7-109 without any substantive changes. *See Reyes v. State*, 253 Md. App. 476, 498 n.15 (2022).

19

We held that Hernandez's argument that his guilty plea was involuntary had not been "finally litigated" because our denial of Hernandez's earlier application for leave to appeal, "without the assignment of any reason[,]" did not "constitute a decision on the merits of the allegation." *Id.* at 365. Judge Alan Wilner, writing for this Court, observed that when an appellate court *grants* an application for leave to appeal, and then "either affirms or reverses the circuit court[,]" it "necessarily has decided the merits" of any allegations it addresses. *Id.* at 363. By contrast, when an appellate court *denies* an application for leave to appeal and does not state its reasons for doing so, the court "tells no one what [it] thought of any particular allegation in the application." *Id.* at 365. Judge Wilner expounded: "[a]pplications are denied for any of several reasons. Many are untimely; many are deficient because they do not 'contain a concise statement of the reasons why the judgment should be reversed or modified' or 'specify the errors allegedly committed by the lower court,' as required by Rule 8-204(b)(2)." *Id.* at 364. Because the denial of the application for leave to appeal at issue in *Hernandez* simply stated that it had "been read and considered and is denied," without further elaboration, the Appellate Court could not determine the reason for its denial. *Id.* The Supreme Court affirmed, reasoning that "[w]hen the [Appellate Court of Maryland] [] denied *leave* to appeal it did no more than say, '[t]here shall be no appeal in this case.'" *State v. Hernandez*, 344 Md. 721, 728 (1997).

We acknowledge that the law of the case is a common law doctrine, and that the meaning of the term "resolved" is not defined by statute in the same manner as "finally

20

litigated."[9]  Nevertheless, applying the foregoing rule in *Hernandez* to the issue before us, we must conclude that the denial of Davis's Application did not "resolve" Davis's illegal sentence claim.  *See Nichols*, 461 Md. at 593; *Garnett*, 172 Md. App. at 562.  Our *per curiam* opinion denying Davis's Application reads exactly the same as the denial at issue in *Hernandez*:

> Having read and considered the application of Vincent Davis for leave to appeal from a denial of petition for post-conviction relief, the application is hereby denied.

*Davis I*, slip op. at 2.  That solitary sentence "tells no one what we thought of any particular allegation in the application."  *Hernandez*, 108 Md. App. at 365.  We could have rejected Davis's Application for "any of several reasons" completely unrelated to his illegal sentence argument.  *Id.* at 364.  Our denial of his Application without a statement of reasons merely told the parties: "[t]here shall be no appeal in this case."  *Hernandez*, 344 Md. at 728.  In essence, we expressly *declined* to "resolve" any of the contentions raised in the Application.

We note that we are in the company of other jurisdictions that hold summary denials of applications for leave to appeal do not implicate the law of the case doctrine.  *See Grievance Adm'r v. Lopatin*, 612 N.W.2d 120, 134 (Mich. 2000) (Supreme Court of Michigan holding that as law of the case doctrine applies "only to issues actually decided, either implicitly or explicitly, in the prior appeal[,]" doctrine does not bar reconsideration of argument when appellate court denies application for leave to appeal without expressing

---

[9] The section of the PCPA that defines the term "finally litigated" is now codified at CP § 7-106.

21

an "opinion on the merits" of the application)[10]; *Lanzet v. Greenberg*, 594 A.2d 1309, 1322 (N.J. 1991) (Supreme Court of New Jersey holding that "issue must have been contested and decided" for law of the case doctrine to apply, and "denial of leave to appeal does not satisfy those requirements"); *People v. Vance*, 390 N.E.2d 867, 872 (Ill. 1979) (Supreme Court of Illinois holding that law of the case doctrine does not apply to denial of application for leave to appeal because "denials of leave to appeal . . . carry no connotation of approval or disapproval of" the decision below). *Cf. Kowis v. Howard*, 838 P.2d 250, 253 (Cal. 1992) (Supreme Court of California, in the context of summary denial of pretrial petition for writ of mandamus, holding that "[a] short statement or citation explaining the basis for the summary denial does not transform the denial into a decision of a cause entitled to law of the case effect."); *Shell v. Butcher*, 339 So.3d 226, 230 (Ala. 2021) (Supreme Court of Alabama holding that "[b]ecause the summary denial of a petition for a writ of mandamus is not a ruling on the merits, the law-of-the-case doctrine is inapplicable").

In sum, adhering to the foregoing precedent, we hold that an argument raised in a Rule 4-345(a) motion to correct an illegal sentence is not precluded by the law of the case doctrine unless an appellate court, in a previous appeal within the same case, rejected or otherwise "resolved" that argument. *Nichols*, 461 Md. at 593; *Garnett*, 172 Md. App. at 562. By summarily denying Davis's Application, "without the assignment of any

---

[10] We observe that appellate courts in Michigan have sometimes denied applications for leave to appeal with a short statement that the application is denied "for lack of merit in the ground presented." *See, e.g.*, *People v. Hayden*, 348 N.W.2d 672, 684 (Mich. Ct. App. 1984). The Michigan courts accord such denials the preclusive effect of the law of the case doctrine because they express an opinion on the merits of the application. *See id.*

22

reason[,]" this Court elected *not* to resolve any of the contentions raised in it. *Hernandez,* 108 Md. App. at 365. Accordingly, the argument raised in Davis's Rule 4-345(a) motion to correct an illegal sentence is not barred by the doctrine of law of the case.

We now turn to address the merits of the underlying Motion to Correct Illegal Sentence.

## II.

## ILLEGAL SENTENCE

### A. Parties' Contentions

*Initial Briefing*

Davis argues that his "conviction and sentence are illegal and were imposed in violation of the United States Constitution, Maryland Declaration of Rights[,] and the laws of Maryland" because first-degree assault was not charged in the indictment issued by the grand jury. Davis contends that Maryland Rule 4-204 "does not contemplate, permit, or authorize the creation of a new charge" through amendment. He maintains that, in order to have obtained a conviction on first-degree assault, the State would have needed a superseding indictment or to have filed a criminal information to add a new offense to the grand jury's indictment.

Davis further posits that the circuit court did not have "[s]ubject [m]atter [j]urisdiction" over the first-degree assault charge "because Md. Rule 4-201(a) states, 'an offense shall be tried (only) on a charging document.'" Though Davis acknowledges that the parties had agreed to add first-degree assault to the indictment, he contends that "[j]urisdiction may not be conferred by agreement or acquiescence[,]" but rather requires

23

"the existence of a valid charging document alleging the proper offense[,]" which was never obtained by the court. Davis asserts that first-degree assault is not a lesser included offense of first-degree sexual offense because "[b]oth criminal offenses contain elements that the other does not." It follows, Davis urges, that "the amendment was illegal because it 'changed the character of the offense charged.'"

Davis emphasizes that a motion to correct an illegal sentence may be brought "at any time" under Rule 4-345(a), and that a motion asserting the failure of a charging document to show jurisdiction or charge an offense may be raised and determined at any time under Rule 4-252(d). Furthermore, citing *Chaney v. State*, 397 Md. 460 (2007), Davis contends that his claim is not subject to waiver "even if [he] consented or did not object" to the sentence during sentencing. Finally, Davis asserts that as the illegality of his sentence stems from the illegality of his conviction for first-degree assault, "both the conviction and sentence" must be vacated.

The State did not address this argument in its initial briefing.

*Supplemental Briefing*

On May 21, we issued an order inviting the parties to submit supplemental briefing on the following:

> Whether a court has fundamental jurisdiction to accept a defendant's plea, as part of a plea agreement with the State, to a new crime – in other words, a crime that was not previously charged in a criminal information or indictment, and that is not a lesser-included offense of any crime previously charged. Please also address whether Maryland Rule 4-243 permits the State to amend a grand jury indictment to charge a new crime as a condition of a plea agreement.

24

The State asserts in its supplemental brief that it "was permitted to amend the indictment to charge first-degree assault" under Rule 4-243 and that "the circuit court had 'fundamental jurisdiction' to accept a guilty plea to first-degree assault." The State points out that "the cases that Davis relies on most heavily . . . did not involve plea agreements" and therefore "had no reason to address Rule 4-243 or to seek to harmonize it with Rule 4-204." It emphasizes that "the court, the prosecutor, and Davis and his counsel all discussed, on the record and at length, an express agreement" to amend the indictment and the court conducted an extended plea colloquy with Davis. Thus, the State contends, "the guilty plea hearing provided Davis 'proper notice'" of the charges against him.

The State urges us to read Rule 4-243 as permitting it to "charge/add first-degree assault" as a "proper condition" of its plea agreement with Davis. As Rule 4-243(a) expressly permits the State to "amend the charging document to charge a specified offense or add a specified offense[,]" the State argues that the circuit court "had fundamental jurisdiction to accept" Davis's *Alford* plea to first-degree assault. Alternatively, if we conclude that the State was required to obtain a new charging document following this amendment, the State urges us to "remand for the ministerial step of filing an amended charging document[,]" rather than reverse Davis's conviction and sentence for first-degree assault. This would "serve the purpose of supplementing the record in order to vindicate any concerns about the 'proscription against double jeopardy' in the future."

Davis counters that Rule 4-243 only permits the State to "charge or add" a "lesser included offense of an offense that already exist[s] in the charging document," or to make amendments as "to matters of form[.]" In Davis's view, the Rule does not countenance

25

any "amendment outside the confines of" this narrow class of changes. Davis further argues that "Rule 4-204, governing the amendment[] of charging documents[,]" permits only "changes or modifications to an existing charge in an existing charging document" and "does not contemplate, permit[,] or authorize the adding of a new charge to an existing charging document/indictment." Quoting *Thanos v. State*, 282 Md. 709, 714 (1978), he characterizes first-degree assault as "a **new crime** that 'changed the character of the offense charged.'"

Davis also posits that the State cannot charge a new crime under Rule 4-243 because charges cannot be added to an indictment "except by the Grand Jury which presented it[,]" and "the court, prosecutor, and [Davis] are not the Grand Jury[.]" To permit otherwise would "eviscerate the constitutional and prudential reasons for indicting defendants[,]" as under Article 21 of the Maryland Declaration of Rights, "[t]he indictment has always served to inform the defendant of exactly what the defendant needs to defend[.]"

### B. Uncharged Crimes and Illegal Sentences: Basic Principles

A reviewing court may correct a sentence that is illegal under Maryland Rule 4-345(a) "at any time." Moreover, claims under Rule 4-345(a) cannot be waived.[11] *Johnson v. State*, 427 Md 356, 371 (2012). A defendant may challenge a sentence under Rule 4-345(a) even when "(1) no objection was made when the sentence was imposed, (2)

---

[11] Similarly, under Rule 4-252(d), a motion "asserting failure of the charging document to show jurisdiction in the court or to charge an offense may be raised and determined at any time." The Supreme Court of Maryland has held that such a claim "is jurisdictional and may be raised . . . for the first time on appeal." *Williams v. State*, 302 Md. 787, 792 (1985).

the defendant purported to consent to it, or (3) the sentence was not challenged in a timely-filed direct appeal." *Chaney v. State*, 397 Md. 460, 466 (2007).  A defendant may bring the claim collaterally and is not required to have filed a direct appeal challenging a sentence as illegal under Rule 4-345(a).  *Id.*

The Supreme Court of Maryland has considered an illegal sentence claim under Rule 4-345(a) even when the defendant originally requested the sentence that the defendant subsequently challenged.  *See Coles v. State*, 290 Md. 296, 303 (1981) (considering defendant's argument that court had no authority to order restitution even though defendant urged court to order restitution at sentencing), *abrogated on other grounds by Valentine v. State*, 305 Md. 108 (1985).[12]  In *State v. Crawley*, the Court further instructed that a defendant may bring a Rule 4-345(a) motion to correct an illegal sentence "regardless of whether the sentence has been negotiated and imposed as part of a binding plea agreement." 455 Md. 52, 67 (2017).

The range of sentences that are illegal under Rule 4-345(a) "is narrow."  *Chaney*, 397 Md. at 466.  A sentence is only illegal under Maryland Rule 4-345(a) when

---

[12] In *Coles*, the Supreme Court of Maryland held that the denial of a motion to correct an illegal sentence, "no matter when the correction request is made, is appealable." *Coles v. State*, 290 Md. 296, 303 (1981).  The Court subsequently reversed itself in *Valentine*, ruling that the "refusal of a trial judge to correct an illegal sentence can only reach the appellate courts" under the PCPA. *Valentine v. State*, 305 Md. 108, 120 (1985). However, the Court then reversed itself again, ruling in *State v. Kanaras*, 357 Md. 170 (1999), that the PCPA "does not preclude an appeal from a circuit court's ruling under Rule 4-345." *Id.* at 184.  This remains the position of the Supreme Court of Maryland today. *See Brown v. State*, 470 Md. 503, 548 n.53 (2020) (noting that "appeal-stripping provision" in PCPA does not apply to Rule 4-345 motions that are not "specifically or exclusively designed to challenge the 'validity' of incarceration" (quoting *Kanaras*, 357 Md. at 187)).

27

the illegality inheres in the sentence itself; *i.e.*, there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed and, for either reason, is instinctually and substantively unlawful.

*Id*. "The Rule is [not] designed to correct . . . sentences resulting from 'procedural error[s].'" *State v. Bustillo*, 480 Md. 650, 665 (2022) (quoting *Bailey v. State*, 464 Md. 685, 697 (2019)). Indeed,

[t]he distinction between those sentences that are 'illegal' in the commonly understood sense, subject to ordinary review and procedural limitations, and those that are 'inherently' illegal, subject to correction 'at any time' under Rule 4–345(a), has been described as the difference between a substantive error in the sentence itself, and a procedural error in the sentencing proceedings.

*Bryant v. State*, 436 Md. 653, 663 (2014). In determining whether an error is merely procedural, as opposed to one which renders any resulting sentence inherently illegal, the critical inquiry is "whether the sentencing judge had the authority to impose the sentence that he did." *Bustillo*, 480 Md. at 678.

A sentence is obviously inherently illegal when it is imposed "in circumstances where no sentence should have been imposed" at all. *Ray v. State*, 230 Md. App. 157, 167 (2016); *see also Alston v. State*, 425 Md. 326, 339 (2012). In *Johnson v. State*, the Supreme Court of Maryland vacated Johnson's conviction and sentence for assault with intent to murder because he was never properly charged with that crime. 427 Md. at 378. Johnson had originally been arrested after police officers executing a search warrant in Baltimore City observed him firing an automatic weapon in their direction. *Id.* at 362. He was subsequently charged by a grand jury with attempted murder, common law assault, and

28

various handgun charges. *Id.* During trial, the attorneys "did not mention assault with intent to murder." *Id.* at 363. Nevertheless, the verdict sheet consulted by the jury at the close of evidence included the crime of assault with intent to murder, and the court instructed the jury on that crime. *Id.* Johnson was subsequently found guilty of assault with intent to murder, along with other charges that had been listed in the grand jury indictment. *Id.*

Sixteen years later, Johnson filed a motion to correct an illegal sentence, "arguing that his sentence for assault with intent to murder was illegal because the indictment did not charge that crime." *Id.* The circuit court denied Johnson's motion, and he appealed to this Court. *Id.* at 363-64. We held that Johnson's "'silence, acquiescence, and perhaps even request for [a] jury instruction' on assault with intent to murder constituted consent to the addition of that charge . . . to the indictment." *Id.* at 371 (quoting *Johnson v. State*, 199 Md. App. 331, 347 (2011)). We opined that "[g]iven his failure to object at trial, [Johnson's] only recourse would have been to argue plain error" on direct appeal. *Johnson*, 199 Md. App. at 348. As Johnson "did not raise" his illegal sentence claim on direct appeal, we concluded that that claim was "not preserved for our review." *Id.*

The Supreme Court of Maryland granted certiorari and reversed. *Johnson*, 427 Md. at 380. The Court emphasized that because an illegal sentence claim "may be raised 'at any time' under Rule 4-345(a)[,]" it is not subject to preservation requirements. *Id.* at 371. The Court reaffirmed that:

> If a sentence is "illegal" within the meaning of [Rule 4–345(a)], the defendant may file a motion in the trial court to "correct" it, notwithstanding that . . . the sentence was not challenged in a timely-filed direct appeal . . . .

29

The sentence may be attacked on direct appeal, but it also may be challenged collaterally and belatedly, and, if the trial court denies relief in response to such a challenge, the defendant may appeal from that denial and obtain relief in an appellate court.

*Id.* at 367 (alterations in original) (quoting *Chaney*, 397 Md. at 460). The Court further clarified that as Johnson's illegal sentence claim was "cognizable under Rule 4-345(a), it [was] not subject to waiver[,]" even though he had purportedly consented to being sentenced for assault with intent to murder. *Id.* at 371.

The Court then evaluated the merits of Johnson's illegal sentence claim. The State argued that the indictment had been "constructively amended" to include a charge for assault with intent to murder, because "the instructions, verdict sheet, arguments of counsel and sentence all addressed the charge." *Id.* at 372. The Court disagreed, reasoning that "the exclusive means to amend an indictment" is through the procedure set out under Maryland Rule 4-204. *Id.* at 373. Rule 4-204 provides in relevant part:

On motion of a party or on its own initiative, the court at any time before verdict may permit a charging document to be amended except that if the amendment changes the character of the offense charged, the consent of the parties is required.

Md. Rule 4-204. The *Johnson* Court explained,

[t]he purpose of Maryland Rule 4-204, governing the amendment of charging documents, is to prevent any unfair surprise to the defendant and his counsel . . . . If the State's proposed amendment changes the character of the offense, and the defendant does not consent, then the amendment is deemed prejudicial to the defendant.

30

427 Md. at 374 (citation omitted).  The Court concluded that this purpose would be "undermine[d]" by an exception permitting the "constructive amendment" of a charging document.  *Id.* at 373-74.

The Court then turned to the language of Rule 4-204 and emphasized that it permits only "changes, alterations, or modifications to **an existing charge** in an existing charging document," not the addition of new charges.  *Id.* at 375 (quoting *Tracy v. State*, 319 Md. 452, 456-57 (1990)).  The purported amendment in Johnson's case, therefore, "was not allowable, under Rule 4-204, because it added a *new* charge to an existing indictment."  *Id.* (emphasis added).  Given that the State never obtained a new charging document charging Johnson with assault with intent to murder, the Court characterized Johnson's conviction for assault with intent to murder as "a conviction on a charge not contained in the indictment."  *Id.* at 375; *see Turner v. State*, 242 Md. 408, 414 (1966) ("[I]t is elementary that a defendant may not be found guilty of a crime of which he was not charged in the indictment.").

In determining whether this error rendered Johnson's sentence for assault with intent to murder illegal under Rule 4-345(a), the Court analogized to its decision in *Jones v. State*, 384 Md. 669 (2005).  In *Jones*, the Court declared the defendant's sentence for a conviction illegal under Rule 4-345(a) because the circuit court had not directed the jury to orally announce its verdict on that conviction.  384 Md. at 685-86.  The *Jones* Court opined:

> "Returning" the verdict in open court mandates an oral announcement of the verdict upon the conclusion of the jury's deliberations to enable the defendant to exercise the right to poll the jury as to the verdicts.  Furthermore, orally announcing each count of the verdict prevents possible confusion during polling and hearkening where there are multiple counts considered by

31

the jury, as in the present case . . . . Therefore, we conclude that for a verdict to be considered final in a criminal case it must be announced orally to permit the defendant the opportunity to exercise the right to poll the jury to ensure the verdict's unanimity.

*Id.* at 684-85.

Analyzing the *Jones* Court's reasoning, the *Johnson* Court opined that the error in that case "made the sentence illegal because it did not sufficiently put the defendant on notice of the verdict." 427 Md. at 376. The Court declared that Johnson "was not properly on notice of the charge of assault with intent to murder, which prevented him from properly defending against it, just as Jones was not properly on notice of the verdict, which prevented him from polling the jury or otherwise addressing it." *Id.* at 377. It further opined that because

> [t]he indictment has always served to inform the defendant of exactly what he needs to defend[,] . . . [t]o allow a charge to be implied by the conduct of the parties and the trial court, though absent from the indictment, . . . would eviscerate the constitutional and prudential reasons for indicting defendants.

*Id.* at 377-78. On this basis, the Court held Johnson's sentence for assault with intent to murder illegal under Rule 4-345(a). *Id.* at 378.

**C. Maryland Rule 4-243: Adding a Charge as a Condition of a Plea Agreement**

A critical distinction between this case and *Johnson* is that, whereas Johnson's conviction resulted from a trial, Davis's resulted from a plea agreement. Maryland Rule 4-243, which governs plea agreements, provides that a "defendant may enter into an agreement with the State's Attorney . . . on any proper condition, including . . . [t]hat the State's attorney will *amend the charging document* to charge a specified offense *or add a*

32

*specified offense*, or will file a new charging document[.]" Rule 4-243(a)(1)(A). [13] (Emphasis added). Rule 4-243 explicitly dictates procedures for amending a charging document as a condition of a plea agreement. Unlike Rule 4-204, which the *Johnson* Court held "does not permit the State to add new charges to an existing indictment[,]" 427 Md. at 375, Rule 4-243 *expressly* provides that the State may, obviously with the agreement of the defendant, "add a specified offense" through amendment.

---

[13] The conditions upon which a defendant may enter into a plea agreement with the State are set forth in Rule 4-243(a)(1)(A)-(F):

(a) **Conditions for agreement.**

(1) Terms. The defendant may enter into an agreement with the State's Attorney for a plea of guilty or nolo contendere on any proper condition, including one or more of the following:

(A) That the State's Attorney will amend the charging document to charge a specified offense or add a specified offense, or will file a new charging document;

(B) That the State's Attorney will enter a nolle prosequi pursuant to Rule 4-247(a) or move to mark certain charges against the defendant stet on the docket pursuant to Rule 4-248(a);

(C) That the State's Attorney will agree to the entry of a judgment of acquittal on certain charges pending against the defendant;

(D) That the State will not charge the defendant with the commission of certain other offenses;

(E) That the State's Attorney will recommend, not oppose, or make no comment to the court with respect to a particular sentence, disposition, or other judicial action;

(F) That the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration pursuant to section (c) of this Rule.

In the State's view, Rule 4-243 permits the sort of amendment made here – charging Davis with first-degree assault, which was not charged in the original grand jury indictment – as a condition of the parties' plea agreement, without obtaining a new charging document. Davis, on the other hand, essentially argues that Rule 4-243 only allows amendments of the kind already permitted by Rule 4-204 – amendments that add a lesser included offense of an existing offense in the charging document[14] or make adjustments to existing charges.

---

[14] In *Hagans v. State*, 316 Md. 429, 447 (1989), the Supreme Court of Maryland recognized that "[t]he principle that a defendant, charged with a greater offense, can be convicted of an uncharged lesser included offense" is well established in the common law of "virtually every jurisdiction in the United States[.]" *Hagans* held that for a crime to qualify as a lesser included offense of another crime charged in a charging document, "[a]ll of the elements of the lesser included offense must be included in the greater offense." 316 Md. at 449. In other words, "it must be impossible to commit the greater without also having committed the lesser." *Id.* This is necessarily the case "where an offense is divided into a more serious degree and a less serious degree, based upon the presence or absence of . . . some [] particular element[.]" *Id.* at 443.

We recently clarified the contours of the lesser included offense exception in *Love v. State*, 257 Md. App. 704, 718 (2023), where the defendant was charged with, among other things, aggravated second-degree assault. At trial, the State proposed that the jury also be instructed on simple second-degree assault as a lesser included offense of aggravated second-degree assault. *Id.* at 710. Over defense counsel's objection, the court permitted the addition of simple second-degree assault on the verdict sheet, and the defendant was subsequently convicted of that crime. *Id.* On appeal, Love challenged her conviction for simple second-degree assault under Rule 4-345(a) as a conviction on a charge not included in the charging document. *Id.* at 711.

We applied the *Hagans* framework and concluded that because aggravated second-degree assault merely adds two additional elements to the crime of simple second-degree assault, the latter is a lesser included offense of the former. *Id.* at 719. We determined that "[t]here is not a single element of simple second-degree assault that is not also an indispensable element of aggravated second-degree assault." *Id.* at 720. As such, we reasoned that Love had "implicitly" been put on notice that she was being charged with simple second-degree assault when she was charged with aggravated second-degree assault. *Id.*

In the instant case, the lesser included offense exception does not apply. At the time Davis was indicted, the controlling statute codified at Maryland Code (2002, 2012 Repl. Col.), Criminal Law Article, § 3-305, defined first-degree sexual offense as "engag[ing] in

34

We find no reported Maryland cases directly supporting or contradicting either party's position. We observe, however, that Rules 4-243 and 4-242 ensure that critical due process protections are provided to defendants when they enter plea agreements. As we explain below, those due process protections are central in our conclusion that Rule 4-243 permits the State to add new charges to an existing charging document as a condition of a plea agreement with a defendant.

*Due Process and Double Jeopardy*

The Supreme Court of Maryland has instructed that when interpreting a Maryland Rule, we must consider the Rule's plain language in light of: "(1) the scheme to which the Rule belongs; (2) the purpose, aim, or policy of" the Supreme Court in adopting the Rule; and (3) the presumption that the Supreme Court intends the Rules and its precedent "to operate together as a consistent and harmonious body of law." *Green v. State*, 456 Md. 97, 125 (2017) (quoting *Fuster v. State*, 437 Md. 653, 664 (2014)). "Rules, like statutes, must

---

a sexual act with another by force, or the threat of force, without the consent of the other" in conjunction with one of five enumerated additional acts. *See also* n. 1 *supra.* First-degree assault was defined as "intentionally caus[ing] or attempt[ing] to cause serious physical injury to another" or committing "an assault with a firearm[.]" Maryland Code (2002, 2012 Repl. Col.), Criminal Law Article, § 3-202. The elements of first-degree assault are not all included in the crime of first-degree sexual offense, and it is entirely possible to commit the latter without committing the former. *See Hagans*, 316 Md. at 449. Specifically, first-degree sexual offense did not require intent to cause serious physical injury, nor did it require the use of a firearm. For instance, a person could commit first-degree sexual offense by "engag[ing] in a sexual act with another by force, or threat of force, without the consent of the other" while aided and abetted by another person, and not satisfy either of these elements. *See* Maryland Code (2002, 2012 Repl. Col.), Criminal Law Article, § 3-305(a)(iv). Unlike in *Love*, these two crimes are not the same basic offense "divided into a more serious degree and a less serious degree"; rather, they are completely separate crimes, each with unique elements. *Hagans*, 316 Md. at 443.

be read together, and rules relating to the same subject matter [must] be construed to harmonize with each other 'and not produce unreasonable or foolish results.'" *Satchell v. State*, 54 Md. App. 333, 339-40 (1983) (quoting *Balt. Transit Co. v. Mezzanotti*, 227 Md. 8, 19-20 (1961)) (internal citations omitted).

Rule 4-243 is contained in Title 4, Chapter 200 of the Maryland Rules. That chapter of the Rules deals with pretrial procedures and includes the previously discussed Rules 4-201 and 4-204. Of particular relevance to plea agreements, Chapter 200 also contains Rule 4-242, which governs "[a] trial court's acceptance of a defendant's guilty plea[.]" *State v. Smith*, 244 Md. App. 354, 371 (2020). The Supreme Court of Maryland has held that a "voluntary, factually supported guilty plea" is "[f]undamental to any plea agreement[.]" *Blinken v. State*, 291 Md. 297, 307 (1981). As such, a "court may not enforce a plea agreement when the plea is involuntary or unsupported factually."[15] *Id.*

---

[15] This principle in part evolved out of the United States Supreme Court's decision in *Boykin v. Alabama*, 395 U.S. 238 (1969). In *Boykin*, the defendant entered a guilty plea to five counts of common law robbery, an offense which was punishable by death in Alabama at the time. *Id.* at 239. Boykin was thereafter sentenced to death on each of the five counts. *Id.* at 240. The record did not indicate that the trial judge asked Boykin any questions concerning his plea, or that Boykin ever addressed the court at all. *Id.* at 239. The Alabama Supreme Court affirmed Boykin's sentence, but three justices "dissented on the ground that the record was inadequate to show that [Boykin] had intelligently and knowingly pleaded guilty." *Id.* at 241.

The United States Supreme Court granted certiorari and agreed with the dissenters, holding that "[i]t was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." *Id.* at 242. In so holding, the Supreme Court explained that entering a plea of guilty entails waiving "[s]everal federal constitutional rights[,]" and therefore, it could not simply "presume a waiver of" those rights "from a silent record." *Id.* at 243. The Court urged trial courts to conduct "an on the record examination of the defendant" in order to ensure "that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible

36

In relevant part, Rule 4-242(c) provides:

> The court may not accept a plea of guilty, including a conditional plea of guilty, until after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof the court determines and announces on the record that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea.

Thus, Rule 4-242 "expressly and unambiguously indicates that" a defendant cannot even enter a guilty plea unless the court first determines, on the record, that (1) the defendant understands the nature of the charges and the consequences of entering a plea to those charges, (2) the defendant voluntarily desires to plead guilty,[16] and (3) there is a factual basis to support the guilty plea. *Parker v. State*, 160 Md. App. 672, 679 (2005).

The factual basis requirement ensures that the defendant does not plead guilty "without realizing that his conduct does not actually fall within the charge." *McCall v. State*, 9 Md. App. 191, 199 (1970). In this respect, the requirement "is closely associated with the due process mandate that a defendant enter a guilty plea voluntarily." *Metheny v. State*, 359 Md. 576, 600 (2000). The court has "broad discretion" in selecting a method by which to determine that there is a factual basis for a guilty plea, but one "generally accepted method" is to have the prosecutor summarize the facts sufficient to constitute the crime

---

range of sentences." *Id.* at 244 n.7 (quoting *Commonwealth ex rel. West v. Rundle*, 237 A.2d 196, 197-98 (Pa. 1968)).

[16] The Supreme Court of Maryland, like the United States Supreme Court, defines the term "voluntary" in the context of a guilty plea as "intelligent, knowing, sufficiently aware, and free from coercion." *Byrd v. State*, 471 Md. 359, 364 n.1 (2020) (citing *United States v. Ruiz*, 536 U.S. 622, 629 (2002)).

and the defendant confirm the truth of the summary. *Smith*, 244 Md. App. at 375 (citations omitted). The court may rely on the prosecutor's summary, provided that "[t]he prosecutor [] 'suppl[ies] concrete facts rather than merely assert[s] that a factual basis exists'" and "'the conduct which the defendant admits constitutes the offense charged to which he has pleaded guilty[.]'" *Id.* (quoting *State v. Thornton*, 73 Md. App. 247, 255, 258 (1987)).

In concert with Rule 4-242, Rule 4-243 is designed to ensure that defendants' due process rights are protected during plea proceedings. The Supreme Court of Maryland has held that "[t]he principal purpose of Rule 4-243 is to eliminate the possibility that the defendant may not fully comprehend the nature of the agreement before pleading guilty." *Cuffley v. State*, 416 Md. 568, 581 (2010). Rule 4-243 is thus designed to ensure that plea bargaining does not "offend notions of due process." *Id.* Read in harmony with the remainder of Title 4, Chapter 200, Rule 4-243 – along with its complementary Rule 4-242 – is designed to provide the precise due process protections that were lacking in *Johnson*.

The filing of a charging document serves to "protect the defendant against multiple prosecutions for the same offense and thereby vindicate the proscription against double jeopardy." *Shannon v. State*, 468 Md. 322, 327 (2020). By operation, Rules 4-242 and 4-243 protect against double jeopardy in a manner similar to that of a charging document. Under Rule 4-242(c), the court must determine and announce on the record that the defendant's plea is voluntary, made with an understanding of the nature of the charge and the consequences of the plea, and factually supported. Further, under Rule 4-243(d), all plea agreement proceedings, "including the defendant's pleading, advice by the court, and inquiry into the voluntariness of the plea or a plea agreement shall be on the record." Thus,

38

in all convictions obtained pursuant to a valid plea agreement, all pertinent details of the crime of which the defendant was convicted will be on the record. *See State v. Williams*, 255 Md. App. 420, 457 (2022) ("The terms of a plea agreement 'are to be made plain on the record, in the presence of the defendant, for the court to hear and accept or reject.'" (quoting *Cuffley v. State*, 416 Md. 568, 579 (2010))).

Contrary to Davis's contentions, the authority to amend a charging document under Rule 4-243 is not coextensive with the authority to amend under Rule 4-204. This is because the dynamics of plea bargaining are fundamentally different from those of a trial. The "amendment" that occurred in *Johnson*, where a charge was not even mentioned until the court read a verdict sheet prepared for the jury at the close of evidence, 427 Md. at 363, is not permissible in the context of a plea agreement. The *Johnson* Court held that the amendment in that case was impermissible under Rule 4-204 because it is designed to "prevent any unfair surprise to the defendant and his counsel[.]" *Id.* at 374 (citation omitted). But Rules 4-242 and 4-243 effectively preclude the possibility that a defendant could be unfairly surprised by the addition of a new charge to a charging document because they require that the defendant understand the nature and consequences of a crime before entering a plea to it. *See Parker*, 160 Md. App. at 679 (under Rule 4-242, before plea agreement can be entered, court must determine that plea underlying the agreement is knowing, voluntary, and factually supported); *Cuffley*, 416 Md. at 581 (Rule 4-243 designed to ensure that defendant comprehends plea agreement before entering it). The defendant's right to have "due time . . . to prepare for his defence" and understand the charges he needs to defend against would not be meaningfully advanced by a prohibition

39

on adding new charges as a condition of a plea agreement. Similarly, the requirement that all terms of a plea agreement and the plea itself be placed on the record allays any double jeopardy concerns. For all of the foregoing reasons, we hold that Rule 4-243 permits, as part of plea agreement, an amendment that adds a new charge to the charging document.[17]

We observe that other jurisdictions have reached similar conclusions. For example, in *State v. Buckley*, 734 P.2d 1047, 1048 (Ariz. Ct. App. 1987), the Court of Appeals of Arizona addressed whether a defendant's conviction for robbery, obtained as part of a plea agreement with the State, was void for lack of subject matter jurisdiction due to the State's failure to file a formal charging document. Precedent in Arizona dictated that the filing of a criminal information was "required to confer subject matter jurisdiction on the court in

---

[17] We recognize that in reaching its result, the *Johnson* Court broadly stated that "Rule 4-204 [] details the exclusive means to amend an indictment." 427 Md. at 373. Given the facts of that case, in which a completely new crime was sprung on the defendant at the close of evidence in his trial, *id.* at 363, the Court understandably expressed concern that "to allow an indictment outside the confines of Rule 4-204" would "undermine the purpose that the rule is meant to serve." *Id.* at 373-74. It bears emphasizing, however, that the *Johnson* Court had no reason to consider whether another Maryland Rule applicable only in the plea agreement context might also provide a means to amend an indictment. The *Johnson* Court was also motivated to guard against amendment outside the confines of Rule 4-204 by this Court's erroneous holding in that case that Johnson's "'silence, acquiescence, and perhaps even request for [a] jury instruction' on assault with intent to murder" supported a "constructive amendment," outside the confines of the Rules, of the indictment. *Johnson v. State*, 199 Md. App. 331, 347, 349 (2011). As the *Johnson* Court held, there is no such thing as a constructive amendment in Maryland – "the Maryland Rules prescribe the exclusive procedure for amending an indictment." *Johnson*, 427 Md. at 373.

As we have explained, allowing the amendment in the instant case did *not* undermine the purpose of Rule 4-204 that the *Johnson* Court highlighted. To the contrary, our reading of Rule 4-243 complements the *Johnson* Court's reading of Rule 4-204, and we read *Johnson* as holding that Rule 4-204 is the exclusive means of amending an indictment in the context of a trial.

40

rendering a criminal conviction even under a guilty plea." *Id.* at 1049 (citing *State v. Smith*, 189 P.2d 205, 207 (Ariz. 1948)). As in Maryland, charging documents serve two main purposes in Arizona: "to give notice to the defendant of the charges against him so that he may prepare a defense, and to protect him against future double jeopardy issues." *Id.* at 1050. The Court reasoned that the plea agreement itself adequately served these purposes, as it set forth the charges against the defendant and explicitly provided "that its terms 'amend the complaint or information, to charge the offense to which the defendant pleads, without the filing of any additional pleading.'" *Id.* Accordingly, the Court held that the plea agreement met "the requirements of an information for the purpose of conferring subject matter jurisdiction upon the trial court." *Id.* *See also State v. Jackson*, 916 So. 2d 1015, 1022 (La. 2005) (observing that Louisiana Code of Criminal Procedure article 487 permits defendant to plead guilty "to a crime not responsive to that charged in the indictment" with prosecutor's agreement and does not require filing of new indictment). *Cf. State v. Ayala*, 153 A.3d 588, 605 (Conn. 2017) (holding that charging document may be amended to charge "an additional or different offense" provided amendment does not impair defendant's ability to prepare for trial or present defense); *State v. Woods*, 825 P.2d 514, 519 (Kan. 1992) (permitting pretrial amendment that added new crime because court determined amendment did not prejudice substantial rights of defendant).

*Indictment by Grand Jury*

In his supplemental brief, Davis asserts that the State's "authority to amend" an indictment under Rule 4-243 is restricted to matters of form, because the Rule does not permit amendment "with respect to matters of substance except by the Grand Jury which

41

presented it." Davis appears to be suggesting that charges may only be added to an indictment by a grand jury, even in the context of a plea agreement. We disagree.

The Fifth Amendment to the Constitution of the United States provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]" Thus, in the federal court system, "it is 'the exclusive province of the grand jury' to alter or broaden the charges set out in an indictment." *United States v. Moore*, 810 F.3d 932, 936 (4th Cir. 2016) (quoting *United States v. Whitfield*, 695 F.3d 288, 309 (4th Cir. 2012)). However, this federal right does not extend to the States. *See Evans v. State*, 389 Md. 456, 474 (2005); *Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 (2000).

Some states have nevertheless granted a right to indictment by a grand jury in their constitutions for certain crimes. *See, e.g.*, *Brown v. Comm'r of Corr.*, 474 N.E.2d 1059, 1061 (Mass. 1985) (holding that article 12 of Massachusetts Declaration of Rights "prohibits the sentencing of a criminal defendant to State prison without indictment"); *In re Grand Jury Appearance Request by Loigman*, 870 A.2d 249, 252 (N.J. 2005) (recognizing that article I, section 8 of New Jersey Constitution provides right to indictment by grand jury); *State v. Troisi*, 206 N.E.3d 695, 703 (Ohio 2022) (recognizing that article I, section 10 of the Ohio Constitution provides right to indictment by grand jury to "a person accused of a felony"). But as we recognized in *Moaney v. State*, 28 Md. App. 408, 412 (1975), in Maryland, "there is no specific constitutional right to indictment by a grand jury." And while there was a right to grand jury indictment for all felonies at common law, common law rights – unlike constitutional rights – "may be changed by legislative

42

enactment, judicial opinion, and rules of court." *Id.* at 414. In *Moaney*, we determined that through amendments to both the Maryland Code and Maryland Rules, Maryland has abrogated the common law right to indictment by grand jury. *Id.* at 414-15. As a result, "[w]hether to seek indictment or to charge by information is now at the election of the State's Attorney[,]" subject only to conditions specified by legislative enactment, judicial opinion, or the Maryland Rules. *Id.* at 414; *see Brown v. State*, 454 Md. 546, 556 (2017) (recognizing that common law right to indictment by grand jury has been abrogated).

To be sure, the Maryland Rules do require action by a grand jury in certain circumstances. For instance, under Rule 4-201(c), when a defendant is originally charged with a crime in the circuit court, the State must obtain a grand jury indictment unless that crime is:

> (A) a misdemeanor, or (B) a felony within the jurisdiction of the District Court, or (C) any other felony and lesser included offense if the defendant requests or consents in writing to be charged by information, or if the defendant has been charged with the felony and a preliminary hearing pursuant to Rule 4-221 has resulted in a finding of probable cause, or if the defendant has been charged with the felony as to which a preliminary hearing has been waived[.]

However, both Rule 4-204 and Rule 4-243 provide for the amendment of charging documents generally and draw no distinctions between indictments and other forms of charging document. There is no indication in either Rule that action by a grand jury is necessary in case of an amendment. Indeed, as cases such as *Johnson* indicate, the State may make amendments to indictments that change the character of the offenses charged, without the involvement of the grand jury, provided it obtains the defendant's consent. *See* 427 Md. at 373; *Counts v. State*, 444 Md. 52, 65-66 (2015) (amendment to indictment

43

substituting felony theft for misdemeanor theft changed character of offense and thus defendant "would have had to consent to it").  Davis does not supply any authority to support his assertion that grand jury action is required to amend an indictment under Rule 4-243, and we have not uncovered any.  Accordingly, we hold that regardless of the form of charging document used, the State may bring new charges against a defendant by amendment as a condition of a plea agreement.

### D. The Instant Case

Based on the record and our examination of the transcript from Davis's plea hearing, we are satisfied that the State properly amended the Baltimore County grand jury indictment to add a charge of first-degree assault.  The terms of the State's proposed plea agreement were all placed on the record as required by Rule 4-243(d).  Those terms included two of the "proper conditions" for entering plea agreements under Rule 4-243(a)(1) – that the State would "amend the charging document to charge a specified offense or add a specified offense" (first-degree assault) and "enter a nolle prosequi" for all remaining charges in case no. K-14-2749.  The court and Davis's counsel jointly advised him on the elements of first-degree assault and confirmed his understanding of the crime.  This ensured that Davis understood the nature of the charges against him and the consequences of entering a plea to those charges, as required by Rule 4-242.[18]  *Parker v.*

---

[18] We note that at the time of the original proceedings in this case, had Davis been convicted of first-degree sexual offense, rather than first-degree assault, he would have been classified as a "Tier III sex offender" under Maryland Code (2001, 2015 Supp.), Criminal Procedure Article § 11-701(q).  This classification would have required him to register as a sex offender under the Maryland sex offender registration act.  Maryland Code

*State*, 160 Md. App. 672, 679 (2005). The court also confirmed that Davis understood the rights he was waiving by entering an *Alford* plea, *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), and intended to enter his plea voluntarily. *Parker*, 160 Md. App. at 679. Finally, the court determined that there was a sufficient factual basis to support Davis's plea to first-degree assault. *Id.*

In sum, as the court properly applied the procedural safeguards of Rules 4-242 and 4-243, we conclude that Davis was properly charged with and convicted of first-degree assault. A sentence is illegal under Maryland Rule 4-345(a) when "the illegality inheres in the sentence itself; *i.e.*, there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed[.]" *Chaney*, 397 Md. at 466. There is no illegality – inherent or otherwise – in Davis's conviction and sentence for first-degree assault.[19]

#### Conclusion

We affirm the circuit court's decision and hold that Davis's sentence for first-degree assault is not inherently illegal under Rule 4-345(a). Although Davis's illegal sentence argument gets past the hurdle erected by the State's contention that it is barred by the law of the case doctrine, it fails on the merits. We hold that the State properly amended the

---

(2001, 2015 Supp.), Criminal Procedure Article § 11-704(a). Davis's conviction for first-degree assault, on the other hand, did not impose this requirement.

[19] Further, the grand jury indictment did not fail, as Davis contends, "to charge an offense" under Rule 4-252(d). The indictment properly charged several offenses initially and, as we have explained, properly charged first-degree assault by amendment under Rule 4-243.

Baltimore County grand jury indictment to charge Davis with first-degree assault as a condition of a plea agreement between the parties. Davis entered an *Alford* plea to that crime and was afforded the procedural protections of Rules 4-242 and 4-243. Under these circumstances, we discern no illegality in Davis's conviction or sentence.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**